**Tyrone P. FORTUNE, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 10–CF–316.**

District of Columbia Court of Appeals.

Argued Jan. 18, 2012.

Decided Jan. 17, 2013.

---

Enid Hinkes for appellant.

Patricia A. Heffernan, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, Roy W. McLeese III, Assistant United States Attorney at the time the brief was filed, and Elizabeth Trosman and Courtney Saleski, Assistant United States Attorneys, were on the brief, for appellee.

Before WASHINGTON, Chief Judge, EASTERLY, Associate Judge, and FARRELL, Senior Judge.

Washington, Chief Judge:

Appellant Tyrone Fortune was convicted of first-degree burglary, attempted robbery, and unlawfully possessing a firearm after a felony conviction. On appeal, he claims that: (1) the trial court committed reversible error by holding a bench trial on the felon-in-possession charge without obtaining a valid waiver of appellant's right to a jury trial; (2) the trial court erred by failing to poll the jury regarding appellant's first-degree burglary and attempted robbery convictions; (3) the trial court violated appellant's constitutional right to be present during all stages of trial by failing to ensure appellant's presence during the portions of *voir dire* that were conducted at the bench; and (4) the evidence was insufficient to support his attempted robbery conviction. For the reasons stated below, we affirm in part and reverse in part.

## I.

Erica Bernard and the appellant, Tyrone Fortune, are cousins. In December 2008, Ms. Bernard was living in an apartment with her wife, Lillian Holland, along with Ms. Holland's children and grandchildren. Fifteen-year-old Janon Washington lived in the apartment upstairs.[1]

On December 29, 2008, Mr. Fortune arrived at the Bernard–Holland apartment and asked Ms. Holland whether Ms. Bernard was home. Ms. Holland replied that Ms. Bernard was not home and that she did not know where Ms. Bernard was, but Mr. Fortune did not believe her. He showed Ms. Holland a gun and told her to tell Ms. Bernard that he was looking for her, and that he was "not playing."

The next day, December 30, 2008, as Ms. Holland was cooking in her kitchen,

---

1. Ms. Holland's son, Kenneth Johnson, is the father of one of Ms. Washington's children.

Janon Washington entered the apartment, followed by Mr. Fortune. Ms. Holland told Mr. Fortune to leave. Mr. Fortune asked where Ms. Bernard was and Ms. Holland again told him to leave. After asking again where Ms. Bernard was, Mr. Fortune walked down the hall to Ms. Bernard's bedroom. Ms. Holland and Ms. Washington followed him.

When Mr. Fortune entered the bedroom, Ms. Bernard was sitting on her bed. Mr. Fortune was "jittery" and high on PCP. In a calm, low, voice, he stated, "What you thought, I was f___in' playing?" and "So you not going to give me no f___in' money?" Ms. Bernard was afraid of Mr. Fortune, whom she described as having a "real strong demeanor" and who had previously threatened to hit her. While Ms. Holland watched from the doorway, Ms. Bernard repeatedly asked Mr. Fortune, "[H]ow the 'f___' did [you] get in my house?" Ms. Holland told Mr. Fortune to leave because he was disrespecting her house. Mr. Fortune refused to leave, said something, drew the same gun that he had shown to Ms. Holland the previous day, and pointed it at Ms. Bernard.

Ms. Bernard walked to the end of her bed. When Mr. Fortune "went to cock the gun," Ms. Bernard dove at him and the two began to fight. At that point, Ms. Holland took her granddaughter upstairs to Ms. Washington's apartment and left her there. Ms. Holland returned to the bedroom three minutes later, and the fight was still underway. At some point, Mr. Fortune dropped his gun. Ms. Bernard grabbed an aluminum bat and swung it at Mr. Fortune; she was uncertain whether

she hit him but thought that she hit the wall. Ms. Holland saw Ms. Bernard hit Mr. Fortune's head; the blow did not stun Mr. Fortune or cause him to bleed. Mr. Fortune threw Ms. Bernard up against a wall and then flipped Ms. Bernard's mattress, stating "that he knew there was some money in there."

Ms. Holland entered the room carrying a telephone. Mr. Fortune asked "who the f___ she was calling?" Ms. Holland stated that she was going to call the police. Mr. Fortune then stated "I'll be back; I'll be back," and left the apartment.[2] Ms. Bernard and Ms. Holland returned to the bedroom, moved the mattress, and located Mr. Fortune's gun in front of the dresser. Ms. Holland told Ms. Bernard not to touch the gun. However, Ms. Bernard unsuccessfully tried to "uncock" the gun so that it would not discharge and then put it on the dresser. She then called the police and reported that: (1) her cousin had come into her house "complaining"; (2) she and her cousin had "gotten into it"; (3) her cousin pulled out a gun and acted like he was going to shoot her; (4) she and her cousin "got into a tussle."

Mr. Fortune was eventually arrested and charged with, *inter alia:* first-degree burglary while armed, in violation of D.C.Code §§ 22–801(a), –4502 (2001); attempted robbery while armed, in violation of D.C.Code §§ 22–2802, –4502, –1803 (2001); and unlawful possession of a firearm after having previously been convicted of a felony, in violation of D.C.Code § 22–4503(a)(2) (2001) (a)(2) (2001 & Supp.

2. Ms. Holland followed him to the outside stairs and then returned to the apartment in time to see Ms. Bernard leaving. Ms. Holland told Ms. Bernard that Mr. Fortune had gone up the steps to Third Street. Ms. Bernard followed Mr. Fortune's path and saw him drive his car away from a parking lot. Upon returning to the apartment, Ms. Bernard called Mr. Fortune's mother and reported, "Your son just came over here lunching on the boat and just pulled a gun out on me." The phrase "lunching on the boat" meant that Mr. Fortune was high on PCP.

2008).[3]

On December 18, 2009, after trial, a jury found Mr. Fortune guilty of the lesser unarmed offenses of first-degree burglary and attempted robbery, and the trial judge found Mr. Fortune guilty of unlawfully possessing a firearm after a felony conviction (felon-in-possession). This appeal followed.

## II.

Mr. Fortune first claims that the trial court erred by failing to obtain a valid waiver of his right to a jury trial before holding a bench trial on the felon-in-possession charge. Mr. Fortune did not object to the trial court's failure to obtain a waiver at trial. We have not resolved whether a defendant must satisfy the strictures of plain error review where a trial court fails to fulfill its duty to elicit a waiver of his Sixth Amendment right to a jury trial and, because the outcome of this case is unaffected by the method of review, we need not resolve that issue in this case.[4]

■ Under the test for plain error, an appellant must show "(1) 'error,' (2) that is 'plain,' and (3) that affected [his] 'substantial rights.' " *Id.* (quoting *In re D.B.*, 947

A.2d 443, 450 (D.C.2008)). To show that the error affected a substantial right, the appellant originally "must show 'a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different.' " *Mozee v. United States*, 963 A.2d 151, 164 (D.C. 2009) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 82, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004)). "Even if all three of these conditions are met, this court will not reverse unless (4) 'the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.' " *Davis*, 984 A.2d at 1259; *see also Harris v. United States*, 602 A.2d 154, 159 (D.C. 1992) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)) ('It is well settled that reversal under the plain error doctrine is justified only in exceptional circumstances where 'a miscarriage of justice would otherwise result.' ").

■ Where a defendant is constitutionally entitled to a jury trial, "the trial shall be by jury, unless the defendant in open court expressly waives trial by jury and requests trial by the court, and the court and the prosecuting officer consent there-

---

**3.** Mr. Fortune was also charged with: two counts of assault with a dangerous weapon ("ADW") (December 29, and 30, 2008), in violation of D.C.Code § 22–402 (2001); two counts of possession of a firearm during a crime of violence or dangerous offense ("PFCV"), in violation of D.C.Code § 22–4504(b) (2001); carrying a pistol without a license, in violation of D.C.Code § 22–4504(a) (2001); possession of an unregistered firearm, in violation of D.C.Code § 7–2502.01 (2001); and unlawful possession of ammunition in violation of D.C.Code § 7–2506.01(3). The jury found Mr. Fortune not guilty of the December 29, 2008, ADW and PFCV charges. The trial court declared a mistrial as to all remaining counts.

**4.** Prior to the Supreme Court's decision in *United States v. Olano*, 507 U.S. 725, 113

S.Ct. 1770, 123 L.Ed.2d 508 (1993), the absence of a waiver would have mandated reversal for a new trial whether or not defense counsel objected to the trial court's error. *See, e.g., (Edward) Jackson v. United States*, 498 A.2d 185, 189–90 (D.C.1985); *Payne v. United States*, 292 A.2d 800, 803 (D.C.1972). Post-*Olano*, we stated that, where a trial court failed to elicit a jury trial waiver "defense counsel had an obligation to object because the error could have been avoided if brought to the court's attention," and thus concluded that the plain error standard of review applies. *Davis v. United States*, 984 A.2d 1255, 1259 (D.C.2009). *Davis* is arguably distinguishable, however, because the charge at issue did not, on its own, constitutionally entitle the defendant to demand a jury trial.

to." D.C.Code § 16–705(a) (2001 & Supp. 2003). Moreover, "[c]ases required to be tried by jury shall be so tried unless the defendant in open court orally and in writing waives a jury trial with the approval of the Court and the consent of the prosecuting officer." Super. Ct.Crim. R. 23(a). A defendant is constitutionally "entitled to a jury trial whenever the offense for which he is charged carries a maximum authorized prison term of greater than six months." *Blanton v. N. Las Vegas, Nev.,* 489 U.S. 538, 542, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989).

■ Here, there is no question that Mr. Fortune was entitled to a jury trial on the felon-in-possession charge, which carries a maximum penalty of ten years imprisonment, D.C.Code § 22–4503(b) (2001 & Supp.2008), and there is no question that the trial court did not obtain a written or oral waiver from Mr. Fortune before conducting a bench trial on the charge. Thus, the trial court's error in failing to seek a waiver of the jury trial was plain and obvious at the time of appellant's trial.[5] The question on appeal is whether the failure to seek the waiver meets the substantial prejudice prong of plain error review and, if so, whether Mr. Fortune has demonstrated how the failure of the trial court to seek an adequate waiver of Mr. Fortune's right to a jury trial affected "the fairness, integrity or public reputation of the judicial proceedings." *Olano,* 507 U.S. at 732, 113 S.Ct. 1770 (quoting *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)).

■■ In the exercise of our supervisory power this court has articulated the appropriate procedures for the trial court to follow, pursuant to D.C.Code § 16–

705(a) and Super. Ct.Crim. R. 23(a), when presented with a request for waiver of jury trial. *See Hawkins v. United States,* 385 A.2d 744, 746–47 (D.C.1978); *Hicks v. United States,* 296 A.2d 615, 617 (D.C. 1972); *Banks v. United States,* 262 A.2d 110, 111 (D.C.1970); *(Frederick) Jackson v. United States,* 262 A.2d 106, 108–09 (D.C.1970); *see also Payne v. United States,* 292 A.2d 800, 802 (D.C.1972). The trial court is responsible for conducting "an oral inquiry of the defendant himself in open court, his replies to which indicate that he understands the nature of his right to a jury trial and that he chooses to waive that right." *Hawkins,* 385 A.2d at 747. "The trial judge must also assure that such waiver is contained in the record as it occurred. . . ." *Banks,* 262 A.2d at 111. A written waiver, signed by the defendant, must accompany the oral waiver. Super. Ct.Crim. R. 23(a); *Hawkins,* 385 A.2d at 747.

We have admonished trial courts in this jurisdiction that strict adherence to the waiver procedure was critical to ensuring a fair trial and that the failure to obtain an express waiver would mandate a reversal of a conviction. Specifically, *(Edward) Jackson, supra* note 4, established that where an express waiver has not been obtained, reversal is necessary without the need to analyze the prejudicial impact of the error. 498 A.2d at 189–90. Recognizing the fundamental nature of the jury trial right, we held that certain safeguards must attend its waiver and reminded trial judges, pursuant to D.C.Code § 16–705(a) and Super. Ct.Crim. R. 23(a), that we had exercised our supervisory power to articulate the appropriate procedures for the

---

5. We reject as speculative the government's argument that "[q]uite obviously, [Mr. Fortune] was aware that he was entitled to have a jury trial." The record does not tell us what

Mr. Fortune did or did not know, and we decline to ascribe knowledge to Mr. Fortune based on the representations of his counsel or the procedural posture of his case.

trial court to follow in this regard. *Id.* at 189.

■■■ Application of plain error review, we conclude, does not require us to retreat from the conclusion that failure to obtain the necessary waiver is prejudicial without further inquiry. In the related context of harmless error, the Supreme Court has recognized the existence of a limited class of errors—termed "structural" errors—so intrinsically harmful as to require reversal without regard to their effect on the particular trial's outcome. *See Neder v. United States,* 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). A structural error is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Id.* at 8, 119 S.Ct. 1827 (quoting *Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). It differs, in other words, from a "trial error" which is one capable of being "quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless . . . ." *Fulminante,* 499 U.S. at 307–08, 111 S.Ct. 1246. This court, in conducting plain error analysis, has concluded that if an error "is structural in nature, the defendant's substantial rights will be deemed to have been affected, without need for further analysis in the context of the particular trial." *Arthur v. United States,* 986 A.2d 398, 413 (D.C.2009); *see also Barrows v. United States,* 15 A.3d 673, 678 n. 6 (D.C.2011) (noting government's concession that, under this court's precedent, "we must assume that [structural error] affected appellant's 'substantial rights,' " while noting too that the Supreme Court has not decided the question).

There is some division among appellate courts as to whether denial of the jury trial right without proper waiver is structural error. *Compare, e.g., United States v. Williams,* 559 F.3d 607, 614–15 (7th Cir.2009) (recognizing that "[a]n invalid jury waiver certainly affects the framework of a case in [the] sense that the determination of guilt or innocence will be made by a judge rather than a jury, and [that] it would be a dubious enterprise to try and show that a jury likely would have reached a different result than the judge did"; but finding the error non-structural, in part because neither that court's required "*Delgado* "[6]—inquiry—adopted under its supervisory authority—nor a written waiver of the jury trial right "is a constitutional mandate"),[7] *with McGurk v. Stenberg,* 163 F.3d 470, 474–75 (8th Cir. 1998) (holding state court's requirement of showing of actual prejudice from wrongful denial of jury trial right to be erroneous; denial of the right is a deprivation of similar constitutional dimension to other structural defects held by the Supreme Court to warrant automatic reversal); *see also Johnson v. State,* 994 So.2d 960, 971 (Fla. 2008) (Anstead, J., dissenting) (arraying decisions from other courts describing denial of right to jury trial as structural error).

■■■ While there are strong arguments on both sides of the issue, we are persuaded that the importance of the right to a jury trial, the explicit statutory command

---

**6.** *United States v. Delgado,* 635 F.2d 889, 890 (7th Cir.1981).

**7.** The *Williams* court also relied on—and so partly distinguished a prior decision of the court—the fact that Williams had "state[d] on the record that he wished to waive a jury trial," 559 F.3d at 615. The challenged defect was the trial judge's failure to confirm that he understood "the nature of the right and the consequences of his waiver." *Id.* at 609. In the present case, there is no corresponding statement of preference by Mr. Fortune on the record.

in this jurisdiction that trial shall be by jury absent an express waiver by the defendant in open court, and the relative inability of a reviewing court to engage in review of whether the error affected the defendant's rights, all counsel in favor of holding that the failure to make the prescribed determination of waiver is a structural error, one that obviates the need for further inquiry into whether the defendant's substantial rights were affected by the error. We so hold.

■ This, of course, does not end our analysis, because appellant must also demonstrate that the denial of his right to a jury trial affected the "fairness, integrity, or public reputation of the judicial proceedings." *Olano*, 507 U.S. at 732, 113 S.Ct. 1770 (quoting *Young*, 470 U.S. at 15, 105 S.Ct. 1038). We have recognized heretofore "that any error that is 'structural' is likely to have an effect on the fairness, integrity or public reputation of judicial proceedings." *Barrows*, 15 A.3d at 679 (internal citations omitted) ("A number of federal appellate courts have reasoned that because a structural error ... 'necessarily render[s] a trial fundamentally unfair,' it is 'difficult to imagine a case where structural error will not satisfy *Olano's* fourth requirement'...."). But *Barrows* rejected the notion that structural error *always* satisfies that test, and the point need not be considered further here in any event, because in the peculiar factual circumstances of this case we are persuaded that appellant has met his burden under the final prong of the plain error test. Mr. Fortune had the right, which he did not waive as required, to have the jury decide the key issue of whether he possessed a firearm when he committed the crimes charged in the indictment. The trial judge, instead, for purposes of the felon-in-possession charge, undertook to decide that issue and found possession at the same time that the jury found that the government had failed to prove beyond a reasonable doubt that Mr. Fortune possessed a weapon during the commission of the first-degree burglary and attempted robbery charges. Under those circumstances, we conclude that to allow the verdict by the trial judge to stand affects the fairness and integrity of the judicial proceedings in this case.

Accordingly, we hold that the trial court committed plain error in failing to obtain a valid waiver of appellant's jury trial right with respect to the felon-in-possession charge.

## III.

■ Mr. Fortune next claims that the trial court erred by failing to poll the jury regarding his first-degree burglary and attempted robbery convictions. Super. Ct.Crim. R. 31(d) requires the trial court to poll jurors individually "on a party's request."[8] However, the rule does not obligate the trial court to conduct a poll *sua sponte*. *Pounds v. United States*, 529 A.2d 791, 796 (D.C.1987). In this case, the record does not support Mr. Fortune's claim because he withdrew his request for a jury poll on the first-degree burglary charge; and he never requested a jury poll on the attempted robbery charge.

■ The first-degree burglary and attempted robbery charges in this case were presented to the jury as lesser-included offenses; the indictment charged Mr. Fortune with first-degree burglary while armed and attempted robbery while armed. When it instructed the jury on

8. Super. Ct.Crim. R. 31(d) provides: "Poll of Jury. After a verdict is returned but before the jury is discharged, the Court shall, on a party's request, or may on its own motion, poll the jurors individually."

those charges, the trial court gave a "reasonable efforts" instruction. A "reasonable efforts" instruction "allows the jury to consider the lesser-included offense, if unable to reach a verdict on the greater offense, after making all reasonable efforts to do so." *Powell v. United States,* 684 A.2d 373, 377 (D.C.1996) (quoting *Wright v. United States,* 588 A.2d 260, 262 (D.C. 1991)). The "reasonable efforts" instruction was reflected on the verdict form as well. Eventually, the jury reached a partial verdict and filled out a portion of the verdict form. The jury found Mr. Fortune guilty of the lesser-included offense (first-degree burglary), but left blank the portion of the verdict form corresponding with the greater offense (first-degree burglary while armed). The trial court asked the foreperson whether the jury had purposely left that portion of the verdict form blank, and the foreperson responded, "Yes." The trial court also asked whether the jury's verdicts were unanimous, and the foreperson responded, "Yes."

At that point, defense counsel requested a jury poll. Rather than poll the jury immediately, the trial court initiated a bench conference in order to discuss with counsel the significance of the blank portion of the verdict form. Moments later, while the parties were still at the bench, the trial court asked defense counsel if he wanted a jury poll, and defense counsel responded, "No."

Following the bench conference, the trial court asked the jury foreperson whether, as to the greater offense (first-degree burglary while armed), the jury had reached a finding. The foreperson responded, "We did not," and the trial court initiated another bench conference. After further discussion, the trial court concluded that the jury had answered the verdict form "absolutely correctly," and that further deliberations with respect to first-degree burglary while armed (and certain other charges) were no longer necessary.

■■■ The record shows, therefore, that Mr. Fortune's claim lacks merit. The trial court failed to conduct a jury poll because Mr. Fortune withdrew his request for a jury poll. When he withdrew his request, Mr. Fortune waived any claim that the trial court erred in failing to poll the jury immediately following his request. *Brown v. United States,* 627 A.2d 499, 508 (D.C. 1993) ("We have repeatedly held that a defendant may not take one position at trial and a contradictory position on appeal."). When the jury later found Mr. Fortune guilty of attempted robbery, Mr. Fortune did not request a jury poll at all, and the trial court did not err in failing to conduct a jury poll *sua sponte. Pounds,* 529 A.2d at 796.

Accordingly, Mr. Fortune's claim that the trial court erred by failing to poll the jury regarding his first-degree burglary and attempted robbery convictions lacks merit.[9]

## IV.

■■■ Mr. Fortune next claims that his constitutional right to be present during all stages of the trial was violated because he was not present during the portions of *voir*

---

9. In the alternative, Mr. Fortune contends that the trial court improperly entered into a plea agreement with defense counsel, pursuant to which the trial court found Mr. Fortune not guilty of the greater offense (first-degree burglary while armed) in exchange for counsel's waiver of a jury poll as to the lesser-included offense (first-degree burglary). The record does not support this contention. The trial court never entered a not guilty verdict on the charge of first-degree burglary while armed, and the record shows that in its discussions with the parties, the trial court was merely attempting to determine the legal significance of the jury's verdict.

*dire* that were conducted at the bench. Under Super. Ct.Crim. R. 43(a), a criminal defendant has the right to be present "at every stage of the trial including the impaneling of the jury." [10] Rule 43(a) "incorporates the protections afforded by the Sixth Amendment Confrontation Clause, the Fifth Amendment Due Process Clause, and the common law right to presence," *Welch v. United States*, 466 A.2d 829, 838 (D.C.1983), and it includes the right to be present during individual *voir dire* of prospective jurors at the bench. *See Lay v. United States*, 831 A.2d 1015, 1021 (D.C. 2003) (citing *Boone v. United States*, 483 A.2d 1135 (D.C.1984) (en banc)). "The importance of the defendant's presence at voir dire cannot be overemphasized." *Boone*, 483 A.2d at 1137.

▇ However, the right to be present during individual *voir dire* is not unlimited, and it can be waived in the absence of a timely request, *see Lay*, 831 A.2d at 1021, or in the absence of any request at all, *see Welch*, 466 A.2d at 839. In *Welch*, the appellant was not present at the *voir dire* conducted in the anteroom and at the bench. On appeal, we rejected appellant's claim that his right to be present was violated, emphasizing that "neither appellant nor his counsel requested appellant's participation in, nor voiced an objection to appellant's absence from, those portions of the voir dire which were conducted outside his presence." *Id.* at 839. Under those circumstances, we held that the appellant's "voluntary acquiescence" in the *voir dire* proceedings conducted outside his presence constituted a waiver and foreclosed his opportunity to be heard on appeal. *Id.*

▇ *Welch* controls here. Mr. Fortune was present when the trial court explained its *voir dire* process, and that, as a part of that process, the trial court planned to question each juror at the bench. The trial court asked:

THE COURT: Is the defendant going to come up to the bench also when you are talking to the potential jurors?

DEFENSE COUNSEL: I haven't decided.

THE COURT: Okay.

DEFENSE COUNSEL: I have mixed emotions about that.

THE COURT: Okay.

DEFENSE COUNSEL: What I probably will do is have him come up the first couple of times and then sit down.

THE COURT: Okay. Now, if he comes up . . . the marshals will come up with him. Okay?

DEFENSE COUNSEL: Absolutely.

When conducting *voir dire* at the bench, the trial court asked defense counsel, "does your client want to come up here?" Defense counsel responded, "[n]ot yet." Here, as in *Welch*, neither Mr. Fortune nor defense counsel requested that Mr. Fortune be present at the bench during *voir dire* or objected to Mr. Fortune's absence. Under *Welch*, therefore, Mr. Fortune waived his right to be present. Mr. Fortune does not attempt to distinguish *Welch*, and instead argues that under *United States v. Gordon*, 829 F.2d 119, 125 (D.C.Cir.1987), the trial court should have held an on-the-record hearing to advise Mr. Fortune of his right to be present at *voir dire* and obtained a personal waiver in open court.

Mr. Fortune's reliance on *Gordon* is unavailing. *Gordon* is not binding on this

10. Super. Ct.Crim. R. 43(a) provides:
Presence Required. The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this Rule.

court and, in any event, arose under circumstances unlike those presented here. Specifically, in *Gordon,* defense counsel waived the defendant's right to be present while the defendant was in custody outside the courtroom. 829 F.2d at 121–22. The D.C. Circuit itself has not extended its holding in *Gordon* to circumstances in which the defendant was inside the courtroom, and, in fact, expressly declined to do so where a non-custodial defendant was inside the courtroom at the time defense counsel waived her right to be present. *See United States v. Hoover–Hankerson,* 511 F.3d 164, 169–70 (D.C.Cir.2007). We are not persuaded that the concerns animating the D.C. Circuit's decision in *Gordon* apply with the same force when a defendant is present in the courtroom, and we are satisfied that, in this case, the trial court's failure to conduct an on-the-record waiver was not error.[11]

## V.

■■■■■ Last, Mr. Fortune claims the evidence was insufficient to support his attempted robbery conviction. In reviewing a challenge to the sufficiency of the evidence, we "must review the evidence in the light most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, and making no distinction between direct and circumstantial evidence." *Simmons v. United States,* 940 A.2d 1014, 1026–27 (D.C.2008) (quoting *Curry v. United States,* 520 A.2d 255, 263 (D.C. 1987) (internal quotation marks omitted)). "The government must present at least some probative evidence on each of the essential elements of the crime." *Down-*

*ing v. United States,* 929 A.2d 848, 857 (D.C.2007) (internal quotation marks and citation omitted).

The elements of attempted robbery, each of which the government must prove beyond a reasonable doubt, are that the defendant: (1) committed an act which was reasonably designed to commit the crime of robbery; (2) intended to commit a robbery; and (3) did more than prepare to commit the crime—the act must have come dangerously close to committing the crime of robbery. *See* Criminal Jury Instructions for the District of Columbia, No. 4.301 (5th ed.2011).[12]

In this case, the evidence was sufficient to support Mr. Fortune's attempted robbery conviction. Ms. Bernard testified that Mr. Fortune walked into her bedroom, high on PCP, and demanded money. Ms. Bernard told him to leave, but he refused. Instead, he pulled out a gun. When he "went to cock the gun," Ms. Bernard dove at him and the two began to fight. During the fight, Mr. Fortune threw Ms. Bernard against the wall and flipped Ms. Bernard's mattress, saying that he knew there was some money in there. These actions suffice to establish each element of attempted robbery.

Mr. Fortune nonetheless claims the evidence was insufficient to support this conviction. He argues: (1) that only Ms. Bernard, and no one else, testified about the attempted robbery; (2) that Ms. Bernard was not a credible witness due to her criminal convictions, her history of drug use, and her history of mental illness; (3) that Ms. Bernard's contention that she had received an SSI check was not corroborated by supporting documentation; and (4)

---

11. We are not suggesting that an on-the-record hearing and personal waiver is not a good practice, and our opinion should not be construed to discourage such practice.

12. *See also Johnson v. United States,* 756 A.2d 458, 463 n. 3 (D.C.2000) (citing *Robinson v. United States,* 608 A.2d 115, 116 (D.C.1992)).

that Ms. Bernard did not mention the attempted robbery in her calls to Mr. Fortune's mother and to the police. Each of these arguments lacks merit.

Mr. Fortune's first and second arguments run counter to well-established principles of law. It is well-established that the testimony of one witness is sufficient to sustain a conviction, *see, e.g., Graham v. United States,* 12 A.3d 1159, 1163 (D.C.2011); *Steward v. United States,* 927 A.2d 1081, 1086 (D.C.2007); *Freeman v. United States,* 912 A.2d 1213, 1220 (D.C. 2006); *Gibson v. United States,* 792 A.2d 1059, 1066 (D.C.2002), and that the question whether a witness's testimony is credible is quintessentially a question for the jury, *see, e.g., Payne v. United States,* 516 A.2d 484, 493 (D.C.1986) (observing that "issues of credibility are committed to the sole and sound discretion of the jury, as the determiners of fact"). In this case, Ms. Bernard's testimony established each element of attempted robbery, and the jury was entitled to credit her testimony. Therefore, Mr. Fortune's first and second arguments lack merit.

Mr. Fortune's third and fourth arguments are likewise unavailing. Ms. Bernard's testimony that she had received an SSI check was undisputed, and Mr. Fortune does not cite us to any case for the proposition that the government was required to corroborate such undisputed testimony with supporting documentation.[13] In any event, while Ms. Bernard's testimony regarding her SSI check was helpful in establishing Mr. Fortune's motive for attempting to rob her, it was not essential; other aspects of Ms. Bernard's testimony were sufficient to establish the elements of attempted robbery. In the same vein, the

fact that Ms. Bernard failed to mention the attempted robbery in her phone calls to Mr. Fortune's mother and to the police does not undermine the sufficiency of the government's case. We agree with the government that, under the circumstances, it makes sense that Ms. Bernard focused on other aspects of Mr. Fortune's conduct in her phone calls to Mr. Fortune's mother and the police.

In sum, the evidence was sufficient to support Mr. Fortune's conviction for attempted robbery, and Mr. Fortune's arguments to the contrary lack merit.

### VI.

Because we conclude that the trial court plainly erred in failing to seek a valid waiver of Mr. Fortune's jury trial right, we reverse the felon-in-possession conviction, but find no basis for reversal of the remaining convictions.

*Affirmed in part and reversed in part.*

---

13. Mr. Fortune's related argument also lacks merit. Even assuming *arguendo* that the trial court plainly erred by failing to strike *sua sponte* as speculative Ms. Bernard's testimony that Mr. Fortune knew about her SSI check, Mr. Fortune has not demonstrated that such error affected his substantial rights.