BURDICK, Justice,
dissenting.
I respectfully dissent from the majority opinion because I am unable to conclude that what happened before the district court on May 22, 2013 was a guilty plea. Rather, the record reflects that a bench trial was conducted, albeit an irregular one. The transcript from that day shows that the following colloquy occurred between the court and the parties:
THE COURT: Counsel indicated before we came in that you had discussed this case further, and that there was a proposal that the parties stipulate to certain facts, and that the Court make findings based upon those facts. Is that generally what counsel wanted to do?
MR. KOVIS: Yes, Your Honor. I talked with Mr. Umphenour, and I’ve gone over your proposed jury Instruction No. 2, which had the elements of the possession of a controlled substance elements one, two, three, and four: On or about June 6th; in the State of Idaho; Gerald K. Umphenour possessed any amount of methamphetamine; and four, the defendant either knew it was methamphetamine or believed it was a controlled substance. Mr. Umphenour would stipulate to all of that being true.
THE COURT: Mr. Tyler, is the State also stipulating to those facts?
MR. TYLER: Yes, Your Honor.
THE COURT: Mr. Umphenour, you’ve had enough time to discuss this with your attorney; is that right?
THE DEFENDANT: Yeah, we talked this morning.
THE COURT: Okay. Well, after talking to him this morning at this time are you stipulating or agreeing that those facts that were just recited by Mr. Kovis are, in fact, true?
THE DEFENDANT: Yeah.
THE COURT: Okay, and has anybody promised you anything, Mr. Umphenour, as far as what would happen if you stipulated to those facts?
THE DEFENDANT: No.
*509 MR. KOYIS: I just want to be clear, I did tell Mr. Umphenour that the two misdemeanor cases would be dismissed. The sentencing would be down the road; that he would not be incarcerated today. It’s an open sentencing. We can argue that if he’s placed on probation he can apply for unsupervised probation so he can go to North Dakota, or if he’s on supervised probation he can ask for an interstate compact, whatever you call it, so that he can go to North Dakota.
THE COURT: Okay. Yeah, and I forgot about the two misdemeanors. It’s my understanding those two misdemeanors would be dismissed, and that’s your understanding, Mr. Umphenour?
THE DEFENDANT: I thought that one—I thought the one open container was already dismissed.
THE COURT: Well, if it wasn’t it’s going to be, how is that? I don’t know. I would have to go look through the file. But if it’s not dismissed it’s going to be dismissed. And then sentencing would not occur today, but obviously you would be free to—you wouldn’t be incarcerated. You would be free to come back at the time of sentencing, and then sentencing would be—after I listen to you and listen to the attorneys I would have to decide what type of sentence would be appropriate in this case. And so it’s my understanding that both counsel want me to make a finding with respect to guilt or innocence based upon the stipulation that’s been entered into by both parties?
MR. KOYIS: That’s correct, Your Honor.
MR. TYLER: Yes, Your Honor.
THE COURT: Based on that stipulation the Court does find that on or about the 6th day of June, 2012; in the State-of Idaho; Gerald K. Umphenour possessed some amount or any amount of methamphetamine; and that Mr. Umphenour either knew it was methamphetamine or believed it was a controlled substance. •Based upon those stipulated facts and findings, the Court does find that Mr. Umphenour is guilty of the offense in count one, that is, possession of a controlled substance.
The foregoing indicates that both the parties and the court, understood that a bench trial was being conducted on stipulated facts. Consistent with this, the transcript from the sentencing hearing reveals that the district court reaffirmed that what occurred on May 22, 2013 was indeed a bench trial. There, the court stated: “My recollection is, of course, that there was a stipulation to facts— a waiver of a jury trial and stipulation to facts, not a plea in this case. Based on those stipulated facts the Court found beyond a reasonable doubt that Mr. Umphenour did on the date alleged possess some amount of methamphetamine.” Similarly, the introduction to the Judgment of Conviction provided:
The defendant waived a jury trial, stipulated to a court trial, and stipulated that on or about the 6th day of June, 2012, in the State of Idaho he possessed some [ajmount o[f] methamphetamine, and that he knew it was methamphetamine or was a controlled substance. Based upon those stipulated facts the court found beyond a reasonable doubt that the defendant was guilty of Possession of a Controlled Substance (Methamphetamine), a felony, in violation of Idaho Code [section] 37-2732(c)(l).
Based upon the foregoing, I simply cannot join the majority in concluding that what occurred before the district court on May 22, 2018 was a guilty plea rather than a bench trial. Having concluded that the proceeding before the court was a bench trial, I would vacate Umphenour’s conviction because-the record does not reflect that Umphenour personally waived his right to a jury trial, which, as illustrated below, is required for a valid waiver.
In State v. Perry, 150 Idaho 209, 224, 245 P.3d 961, 976 (2010), this Court articulated the test for cases on appeal that involve unobjected-to fundamental error: (1) the defendant must demonstrate that one or more of the defendant’s unwaived constitutional rights was violated; (2) the error must be clear or obvious, without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical *510 decision; and (S) the defendant must demonstrate that the error affected the defendant’s substantial rights, meaning (in most instances) that it must have affected the outcome of the trial proceedings. Id. Consequently,
where an error has occurred at trial and was not followed by a contemporaneous objection, such error shall only be reviewed where the defendant demonstrates to an appellate court that one of his un-waived constitutional rights was plainly violated. If the defendant meets this burden then an appellate court shall review the error under the harmless error test, with the defendant bearing the burden of proving there is a reasonable possibility that the error affected the outcome of the trial.
Id. Thus, this Court left open the question as to whether an unobjected-to constitutional violation rising to the level of structural error would satisfy the third prong of the fundamental error analysis without a showing of actual effect on the outcome of the trial.
Applying Idaho’s fundamental error analysis to the facts of this case, I would hold that Umphenour’s conviction should be vacated. First, there was a clear violation of Umphen-our’s constitutional right to a jury trial. The Sixth Amendment to the United States Constitution and Article I, § 7 of the Idaho Constitution both preserve a criminal defendant’s right to trial by jury. Indeed, the Sixth Amendment to the United States Constitution provides: “In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the erime shall have been committed....” U.S. Const, amend. VI. Unlike the Sixth Amendment, however, Article I, § 7 of the Idaho Constitution also directs how that right to a jury trial may be waived. It states:
The right of trial by jury shall remain inviolate,. A trial by jury may be waived in all criminal cases, by the consent of all parties, expressed in open court, and in civil actions by the consent of the parties, signified in such manner as may be prescribed by law.
Idaho Const. art. I, § 7 (emphasis added). There is nothing in the Idaho Constitution that requires a defendant to personally waive his right to a jury. However, a few years after the Idaho Constitution was amended to allow a defendant to waive his right to a jury trial in all criminal cases, the Idaho Supreme Court adopted a criminal rule that sets the standard for waiver of a jury trial in felony cases. Idaho Criminal Rule 23(a) states:
In felony cases issues of fact must be tried by a jury, unless a trial by jury is waived by a written waiver executed by the defendant in open court with the consent of the prosecutor expressed in open court and entered in the minutes.
(emphasis added). Thus, although the Idaho Constitution does not explicitly require a defendant to personally waive the right to a jury trial, this Court has promulgated a Rule requiring such a personal waiver in felony cases. The Constitution contemplates that the manner in which the right to a jury trial is waived may be prescribed by law, which is precisely what Idaho Criminal Rule 23(a) does. Thus, in felony cases, I would hold that a defendant must personally waive the right to a jury trial for that waiver to be constitutionally valid.
Here, there is no evidence in the record to indicate that Umphenour personally waived his right to a jury trial. The record reflects that the trial court confirmed with Umphen-our’s counsel that the parties were stipulating to certain facts and that they wanted the court to make a finding as to guilt, or innocence based on those facts. However, the record does not indicate that Umphenour personally agreed to anything other than the stipulated facts before the court: he did not confirm verbally or in writing that he was waiving his right to a jury trial or that he understood the rights that he was waiving by doing so, and the State has failed to produce any other evidence that would show Um-phenour personally waived his right to a jury trial. Although the court minute entries from the arraignment indicate that Umphen-our was advised of the rights he would give up upon a guilty plea and that he understood those rights, there is no transcript before this Court from the arraignment. Without a reporter’s transcript to establish the record of what took place at the arraignment, it is *511 unclear whether Umphenour was in fact advised of his right to a jury trial or that he understood he would be giving that right up if he were to plead guilty. “Clerk’s minutes, of necessity, are summary in nature and do not contain all of the details as to what occurred,” and are therefore insufficient to show that Umphenour validly waived his right to a jury trial. Martinez v. State, 92 Idaho 148, 149, 438 P.2d 893, 894 (1968). This Court should decline to presume such a waiver from a silent record. See State v. Swan, 108 Idaho 963, 965, 703 P.2d 727, 729 (Ct.App.1985); Boykin v. Alabama, 395 U.S. 238, 89. S.Ct. 1709, 23 L.Ed.2d 274 (1969); Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) (stating that the inght to jury trial is a fundamental right and warning that a waiver of that right is not to be presumed from a silent record).
As the Colorado Supreme Court aptly put it, “[i]f a waiver could be implied from a defendant’s failure to object to his counsel’s statement, there would be an increased danger of misinterpretation with respect to a right considered one of the most important in our democracy.” Rice v. People, 193 Colo. 270, 565 P.2d 940, 941 (1977). Thus, “a requirement that the defendant personally waive the right to a trial by jury alleviates the difficult task presented to an appellate court that is seeking to determine the meaning of the defendant’s silence.” Id. Because the record does not show that Umphenour personally waived his right to a jury trial, there was a clear violation of his constitutional right to a trial by jury. Consequently, the first two prongs of the fundamental error analysis have been met. The next issue then, is whether the substantial rights prong has been satisfied.
Umphenour argues that he.is not required to prove the third prong of the fundamental error analysis because an invalid waiver of the right to a jury trial is a structural error, which automatically satisfies the third prong without showing the invalid waiver affected his substantial rights. I would agree.
The third element of our fundamental error analysis requires that “the defendant .. demonstrate that the error affected the defendant’s substantial rights, meaning (in most instances) that it must have affected the outcome of the trial proceedings.” Perry, 150 Idaho at 226, 245 P.3d at 978. This case invokes the “in most instances” language from the foregoing passage. This Court adopted its three-prong fundamental analysis test, including the “in most instances” hedge, from United States v. Olano, 507 U.S. 725, 732-35, 113 S.Ct. 1770, 1776-78, 123 L.Ed.2d 508, 518-20 (1993). There, the U.S. Supreme Court explained that federal courts should use the three-part inquiry to determine whether they should reverse on grounds of plain error-to which no objection was made in the trial court. Id. While discussing the third prong of the Olano test, the Idaho Supreme Court explained:
The reason the parenthetical—(in most instances)—was inserted into the third prong above is because the U.S. Supreme Court in Olano declined to determine whether unobjected to constitutional violations rising to the level of structural defects will satisfy the ‘affect substantial rights’ prong without a showing of actual affect on the outcome of the case.
[[Image here]]
The State of Idaho shares the same conflicting interests as the federal government when it comes to review of unobject-ed to error, and we find that the U.S. Supreme Court struck an appropriate balance between these competing interests in their opinion in Olano.
Perry, 150 Idaho at 225-26, 245 P.3d at 977-78. Thus, by adopting the U.S. Supreme Court’s three-prong test, this Court, like the U.S. Supreme Court, left open the question whether a constitutional violation rising to the level of a structural defect would satisfy the third prong without a showing of actual effect on the outcome of the trial. Thus, there are two issues at play here. First, whether an invalid waiver of the right to a jury trial constitutes structural error, and if so, whether structural errors satisfy the third prong of the fundamental error analysis.
i. An iwvaljd waiver of the right to a jury trial constitutes strucHral error.
This Court has followed U.S. Supreme Court jurisprudence for purposes of identify- *512 tag structural defects. In Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), the U.S. Supreme Court reiterated that some constitutional rights are so basic to a fair trial that the violation of those rights requires an automatic reversal and is not subject to harmless error analysis. Chief Justice Rehnquist, writing for the majority on the issue, noted that constitutional error could essentially be broken down to two different categories; 1) trial errors “which [occur] during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether [their] admission was harmless beyond a reasonable doubt;” and 2) structural defects which affect “the framework within which the trial proceeds, rather than simply an error in the trial process itself’ and thus are so inherently unfair that they are not subject to harmless error analysis. Id. at 307-308, 310, 111 S.Ct. at 1263-64, 1265, 113 L.Ed.2d at 329-30, 331-32. Explaining why certain constitutional violations amount to structural defects, the U.S. Supreme Court noted that “‘[without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.’” Id. at 310, 111 S.Ct. at 1265, 113 L.Ed.2d at 331-32 (quoting Rose v. Clark, 478 U.S. 570, 577-78, 106 S.Ct. 3101, 3105-06, 92 L.Ed.2d 460, 470-71 (1986)).
The U.S. Supreme Court has found that the following errors constitute structural defects: (1) complete denial of counsel (Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)); (2) biased trial judge (Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927)); (3) racial discrimination in the selection of a grand jury (Vasquez v. Hillery, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986)); (4) denial of self-representation at trial (McKaskle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984)); (5) denial of a public trial (Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984)); (6) defective reasonable-doubt instruction (Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)); and (7) erroneous deprivation of the right to counsel of choice (U.S. v. Gonzalez-Lopez, 548 U.S. 140, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006)). Although there may be other constitutional violations that would so affect the core of the trial process that they require an automatic reversal, as a general rule, most constitutional violations will be subject to harmless error analysis. Neder v. United States, 527 U.S. 1, 8, 119 S.Ct. 1827, 1833, 144 L.Ed.2d 35, 46 (1999).
An invalid waiver of the right to a jury trial is not included in this list of structural defects. However, neither this Court nor the U.S. Supreme Court has explicitly stated that structural defects ai’e limited to those listed above. In my view, an invalid waiver falls under the same umbrella as a “denial of a public trial” structural defect because by accepting an invalid waiver, the trial court is, in essence, denying the defendant a jury trial. The U.S. Supreme Court has emphasized that the deprivation of the right to a jury trial has consequences that are neces-saiily unquantifiable and indeterminable, and therefore unquestionably qualifies as “structural error” and defies analysis by harmless-error standards under Fulminante. Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). Additionally, it is not an error in the trial process, but a defect in the framework within which the trial proceeds, which militates towards classifying the invalid waiver as a structural defect. Finally, although it may not be the ease here, in most other circumstances it would be difficult to assess the effect of an invalid waiver of the right to a jury trial on the outcome of a trial.
In any event, although not binding on this Court, the Ninth Circuit has concluded that an invalid waiver of the right to a jury trial constitutes structural error and requires reversal without showing prejudice. See United States v. Duarte-Higareda, 113 F.3d 1000, 1003 (9th Cir.1997) (“[W]e conclude that this error warrants reversal because the district court’s failure to ensure the adequacy of [the defendant’s] jury waiver affected the basic framework of [the defendant’s] trial and we cannot determine whether this effect was harmless.”). See also Miller v. Dormire, 310 F.3d 600, 604 (8th Cir.2002) (finding that the *513 defendant’s attorney s waiver of a jury trial was structural error requiring automatic reversal of the defendant’s conviction).
Additionally, there are several cases from our sister courts that have reversed a defendant’s conviction without a showing of actual prejudice where there was an invalid waiver of the right to a jury trial. For example, in Fortune v. United States, 59 A.3d 949, 955 (D.C.Ct.App.2013), the District of Columbia Court of Appeals, after noting the division among appellate courts[3] as.to whether denial of the right to a jury trial without proper waiver is structural error, determined that under D.C. law, it was in fact structural error. The court there reasoned:
While there are strong arguments on both sides of the issue, we are persuaded that the importance of the right to a jury trial, the explicit statutory command in this jurisdiction that trial shall be by jury absent an express waiver by the defendant in open court, and the relative inability of a reviewing court to engage in review of whether the error affected tiie defendant’s rights, all counsel in favor of holding that the failure to make the prescribed determination of waiver is a structural error,, one that obviates the need for further inquiry into whether the defendant’s substantial rights were affected by the error.
Id. at 956-57. The court there concluded that an invalid waiver of the right to a jury trial constitutes structural error requiring automatic reversal without a showing of prejudice. Id. See also State v. Gore, 288 Conn. 770, 955 A.2d 1, 14 (2008) (concluding that an invalid jury trial waiver is structural error that is per se prejudicial and is not subject to harmless error analysis); State v. Baker, 217 Ariz. 118, 170 P.3d 727, 731 (Ariz.Ct.App.2007) (holding that where the record showed neither that the trial court explained to the defendant his right to a jury trial nor an effective waiver of the right, structural error occurred); State v. Offing, 113 Ariz. 287, 551 P.2d 556, 557 (1976) (reversing and remanding for new trial because record did not affirmatively show that defendant knew he was giving up jury trial right); People v. Collins, 26 Cal.4th 297, 109 Cal.Rptr.2d 836, 27 P.3d 726, 736 (2001) (finding that the trial court’s improper inducement of a jury-trial waiver amounted to a structural defect); People v. Cook, 285 Mich.App. 420, 776 N.W.2d 164, 168 (2009) (“[W]e conclude that a constitutionally invalid jury waiver is a structural error that requires reversal.”); cf., e.g., Balbosa v. State, 275 Ga. 574, 571 S.E.2d 368, 369 (2002) (“We are of the opinion that a harmless error analysis cannot be applied to a jury trial waiver.”); State v. Hauk, 257 Wis.2d 579, 652 N.W.2d 393, 404 n. 9 (Wis.Ct.App.2002) (refusing to engage in harmless-error analysis where there was no valid jury waiver); Gyulveszi v. State, 805 So.2d 84, 85 (Fla. 2d DCA 2002) (concluding that the absence of a jury-trial waiver by the defendant in writing or on the record was structural error requiring reversal).
Considering the important right that is at stake, I would follow our sister courts and hold that invalid jury trial waivers constitute structural error. The question remaining, then, is whether such structural errors satisfy the third prong of the fundamental error analysis without showing actual prejudice.
ii. Structural errors satisfy the third prong of the fundamental error analysis.
The State argues that the proper prejudice analysis in cases such as this one should not be whether the ultimate outcome of the trial *514 would be different absent the error. Instead, the State. contends that the proper prejudice analysis should ask whether there is any evidence that the defendant would not have waived the right to a jury if asked personally by the trial court. This argument must fail because our fundamental error analysis requires a showing that “the error affected the defendant’s substantial rights, meaning (in most instances) that it must have affected the outcome of the trial proceedings.” Perry, 150 Idaho at 226, 245 P.3d at 978. Moreover, the issue here is not the kind of prejudice that must be shown, but rather whether prejudice is even required to be shown. More specifically, whether a structural error in the form of an invalid jury waiver requires an automatic reversal without showing that the defendant’s substantial rights were affected.
As discussed above, the effect of an invalid waiver of the right to a jury trial would be difficult to determine, and the consequences are necessarily unquantifiable and indeterminable. Those are the hallmarks of structural defects as described by the U.S. Supreme Court, which makes them “defy analysis by harmless-error standards.” Fulminante, 499 U.S. at 309-10, 111 S.Ct. at 1264-65, 113 L.Ed.2d at 330-31. Consequently, the authority discussed above concluding that an invalid waiver of a jury trial right constitutes structural error has also held, or at least suggested, that the error is not subject to harmless error analysis, but rather requires automatic reversal without a showing of prejudice. I would agree with the consensus of those courts that have held such invalid jury waivers constitute structural error for which no showing of prejudice is required. Therefore, I would hold that structural errors in the form of invalid jury waivers satisfy the third prong of our fundamental error analysis.
In sum, I would hold that: (1) the proceeding on May 22, 2013 before the district court below was a bench trial rather than a guilty plea; (2) a defendant must personally waive his right to a jury trial; (3) Umphenour demonstrated a clear violation of his constitutional right to a jury trial because the record does not show he personally waived that right; (4) Umphenour’s invalid waiver of his right to a jury trial was structural error; and (5) structural errors satisfy the third prong of our fundamental error analysis. Accordingly, I would vacate Umphenour’s conviction.

. The court compared United States v. Williams, 559 F.3d 607, 614-15 (7th Cir.2009) (recognizing that "[a]n invalid jury waiver certainly affects the framework of a case in [the] sense that the determination of guilt or innocence will be made by a judge rather than a jury, and [that] it would be a dubious enterprise to try and show that a jury likely would have reached a different result than the judge did;” but nonetheless finding the error non-structural because neither a court’s inquiry with the defendant nor a defendant's written waiver of the jury trial right was a constitutional mandate), with McGurk v. Stenberg, 163 F.3d 470, 474-75 (8th Cir.1998) (holding that a state court’s requirement of showing of actual prejudice from wrongful denial of jury trial right to be erroneous because a denial of the right is a deprivation of similar constitutional dimension to other structural defects held by the Supreme Court to warrant automatic reversal). It should be noted however, that in Williams, the defendant had also stated on the record that he wished to waive a jury trial.