In the

# United States Court of Appeals

### For the Seventh Circuit

No. 07-3004

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LARRY A. WILLIAMS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 CR 967—**Wayne R. Andersen**, *Judge*.

ARGUED APRIL 10, 2008—DECIDED MARCH 11, 2009

Before EASTERBROOK, *Chief Judge*, and ROVNER and
SYKES, *Circuit Judges*.

ROVNER, *Circuit Judge*. Following a bench trial, Larry
Williams was convicted of distributing crack cocaine
and was ordered to serve a prison term of 252 months.
Williams appeals, contending that the district court erred
in accepting his jury waiver without taking steps to
ensure that the waiver was knowing and intelligent.
Because Williams did not raise this issue below, our

review is confined to one for plain error, and the record does not support a finding that his substantial rights were affected by any error in accepting his waiver. We therefore affirm Williams' conviction.

## I.

A one-count indictment charged that Williams knowingly and intentionally distributed more than fifty grams of cocaine base in the form of crack cocaine, in violation of 21 U.S.C. § 841(a)(1). R. 5. The basis for the charge was Williams' sale of approximately fifty-eight grams of crack cocaine to an undercover agent of the Bureau of Alcohol, Tobacco and Firearms and a cooperating individual. The sale took place on October 30, 2003. Williams was arrested more than a year later, on November 4, 2004, and was indicted on November 30, 2004. He was arraigned on December 7, 2004, and entered a plea of not guilty. A series of status conferences and continuances ensued. The Federal Defender was appointed to represent Williams on May 19, 2006, after his previously-appointed counsel withdrew.

On November 30, 2006, when the parties' counsel appeared before the court for another status hearing, Williams' attorney announced that Williams, who was not present, wanted a bench trial:

Mr. Rodriguez:   Good morning, your Honor. Sergio Rodriguez from the Federal Defender Program on behalf of Larry Williams. He was not brought over, but I was

in contact with him. Your Honor, we are here to get a trial date finally. We are going to ask that this Court consider a bench trial. It should only be a couple of days long.

. . .

The Court:        How long will it take?

Mr. Rodriguez:    It is only going to be a couple of days.

Mr. Gurland:      It should be quick.
[Assistant U.S.
 Attorney]

The Court:        And you have consented?

Mr. Gurland:      I have no objection to a bench trial.

Mr. Rodriguez:    He is smiling, Judge.

The Court:        Well, you actually have to consent.

Mr. Gurland:      I consent.

The Court:        I know that is painful.

R. 100 at 2-3. The court set the matter down for a bench trial on March 5, 2007.

The record of that hearing manifests compliance with the second and third of the conditions set forth in Federal Rule of Criminal Procedure 23(a) for a bench trial—consent by government and consent by the court—but not the first—a written waiver by the defendant of his right to a jury trial. The record contains

no such written waiver, and neither party maintains that the defendant ever executed such a waiver.

Subsequent to this hearing, Williams' counsel filed a motion seeking leave to withdraw from representing Williams and to continue the trial date based on a breakdown of the attorney-client relationship. In that motion, Williams' attorney noted that "Mr. Williams still wishes to have a bench trial and would like one as soon as possible, but would like to have some time to prepare with new counsel." R. 58 at 2 ¶4. The court granted counsel's request to withdraw and a new attorney was appointed in his stead, but the scheduled trial date remained in place.

When the parties appeared for trial as scheduled on March 5, the court took the opportunity at the outset to confirm that Williams indeed wished to waive his right to a jury trial in favor of a bench trial. "I just want to make sure that you know you do have a right to a jury trial," Judge Andersen told Williams. R. 77-1 at 3. "And would you like to have a bench trial and waive the jury trial?" *Id.* "Yes, sir," Williams replied. *Id.* The trial commenced and concluded on the following day, when Judge Andersen found Williams guilty. The judge later ordered him to serve a prison term of 252 months.

Although the court confirmed with Williams at the start of the trial that he wished to waive his right to a jury trial, the court did not comply with the supervisory rule we adopted in *United States v. Scott*, 583 F.2d 362, 364 (7th Cir. 1978) (per curiam), that requires a district court to interrogate a defendant before accepting his jury waiver in order to confirm that he understands the

nature of the right and the consequences of his waiver. In *United States v. Delgado*, 635 F.2d 889, 890 (7th Cir. 1981), we set out a colloquy that we viewed as sufficient to accomplish this task, one that explains to the defendant that (1) "a jury is composed of twelve members of the community"; (2) "the defendant may participate in the selection of jurors"; (3) "the verdict of the jury is unanimous"; and (4) in a bench trial, "the judge alone will decide guilt or innocence." The court's brief exchange with Williams at the start of the trial did not cover these points; the court simply confirmed that Williams knew he had a right to a jury trial and wished to waive it.

At no time in the proceedings below, however, did Williams or his counsel ever raise these omissions. Neither during nor after the trial did Williams object to the trial or to the judge's verdict on the ground that his waiver of the jury was uninformed and therefore invalid.

It is only on appeal that Williams argues that he did not knowingly and intelligently waive his right to trial by a jury. In the absence of a *Delgado* colloquy and other record evidence establishing his comprehension of the nature of right he was waiving, Williams contends that his jury waiver was invalid and that we must vacate his conviction and remand for a new trial. Alternatively, he asks that we remand for an evidentiary hearing as to whether his jury waiver was knowing and intelligent.

## II.

The Sixth Amendment right to a trial by a jury in a criminal case is considered "fundamental to the American

scheme of justice," *Duncan v. Louisiana*, 391 U.S. 145, 149, 88 S. Ct. 1444, 1447 (1968), safeguarding the defendant from "oppression by the Government," *id.* at 155, 88 S. Ct. at 1451. "Given this purpose, the essential feature of a jury obviously lies in the interposition between the accused and his accuser of the commonsense judgment of a group of laymen, and in the community participation and shared responsibility that results from the group's determination of guilt or innocence." *Williams v. Florida*, 399 U.S. 78, 100, 90 S. Ct. 1893, 1905-06 (1970). It is a right that the defendant can choose to waive. *Adams v. McCann*, 317 U.S. 269, 275, 63 S. Ct. 236, 240 (1942); *Patton v. United States*, 281 U.S. 276, 312, 50 S. Ct. 253, 263 (1930). In keeping with the importance of the right, however, the decision to waive a jury is among those basic decisions about a case as to which the defendant himself has the ultimate authority; counsel may not make the decision on his behalf. *Jones v. Barnes*, 463 U.S. 745, 751, 103 S. Ct. 3308, 3312 (1983); *United States v. Boyd*, 86 F.3d 719, 723-24 (7th Cir. 1996); *United States v. Robinson*, 8 F.3d 418, 423 (7th Cir. 1993) (quoting *Williams v. DeRobertis*, 715 F.2d 1174, 1182 (7th Cir. 1983)). For the defendant's waiver to be valid, it must be voluntary, knowing, and intelligent. *Williams*, 715 F.2d at 1178-79 (quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469 (1970)); *see also Corcoran v. Buss*, 551 F.3d 703, 711 (7th Cir. 2008).

Rule 23(a) provides that "[i]f the defendant is entitled to a jury trial, the trial must be by jury unless: (1) the defendant waives a jury trial in writing; (2) the government consents; and (3) the court approves." Fed. R. Crim. P. 23(a). The rule reflects the Supreme Court's decision in

*Patton*, 281 U.S. at 312, 50 S. Ct. 263; *see also Adams*, 317 U.S. at 275, 63 S. Ct. at 240, and by requiring that the defendant's waiver be in writing, the rule serves "to ensure that a criminal defendant is aware of his jury right before waiving it and that any waiver is personal and unequivocal," *United States v. Diaz*, 540 F.3d 1316, 1322 (11th Cir. 2008) (per curiam) (quoting *United States v. Garrett*, 727 F.2d 1003, 1012 (11th Cir. 1984), *judgment aff'd*, 471 U.S. 773, 105 S. Ct. 2407 (1985)); *see also Brown v. Burns*, 996 F.2d 219, 221 (9th Cir. 1993) (per curiam) (compliance with Rule 23(a) provides best record evidence of defendant's voluntary waiver).

Compliance with Rule 23(a) does not by itself establish that the defendant's waiver was informed, and it is for that reason that in *Scott* we instructed district courts to engage the defendant in a colloquy, later outlined in *Delgado*, designed to ensure that the defendant understands what he is giving up when he waives his right to a jury. *See Brady*, 397 U.S. at 748, 90 S. Ct. at 1469 ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."); *see also United States v. Lilly*, 536 F.3d 190, 197-98 (3d Cir. 2008) (coll. cases that either require or urge colloquies to ensure that jury waivers are informed).

However, neither a *Delgado* colloquy nor a written waiver is a constitutional mandate. *See United States v. Rodriguez*, 888 F.2d 519, 527 (7th Cir. 1989) (colloquy not constitutionally required) (citing *Williams*, 715 F.2d at

1178); *Wandick v. Chrans*, 869 F.2d 1084, 1088 (7th Cir. 1989) (same); *Robinson*, 8 F.3d at 422 (citing *Wandick*, 869 F.2d at 1088) (written waiver not constitutionally required); *Brown*, 996 F.2d at 221 (same); *Fitzgerald v. Withrow*, 292 F.3d 500, 504 (6th Cir. 2002) (constitution does not require that jury waiver take any particular form); *see also Basile v. United States*, 999 F.2d 274, 276 (7th Cir. 1993) (mere violation of federal criminal rule is not a constitutional error). Nor is reversal automatic in the exercise of our supervisory authority for the failure to comply with one or both of these requirements. *See Robinson*, 8 F.3d at 422; *Rodriguez*, 88 F.2d at 527-28.[1] As we have said, the sole constitutional requirement is that the waiver be voluntary, knowing, and intelligent. The colloquy and the written waiver serve to document these qualities, but a jury waiver may be valid despite their absence. So long as the defendant had a "concrete understanding" of his right to a jury trial, his waiver is valid. *Williams*, 715 F.2d at 1180 & n.3; *see also Whitehead v. Cowan*, 263 F.3d 708, 732-33 (7th Cir. 2001); *Robinson*, 8 F.3d at 422-23.

Here we have a record throwing little if any light on Williams' understanding of the right he waived. (Williams does not argue that his waiver was involuntary, and

---

[1] Both *Robinson* and *Rodriguez* adhere to the Supreme Court's decision in *Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S. Ct. 2369 (1988), which holds that a federal court may not rely on its supervisory power to circumvent the harmless error inquiry prescribed by Federal Rule of Criminal Procedure 52(a). *See also Peguero v. United States*, 526 U.S. 23, 29-30, 119 S. Ct. 961, 965 (1999).

given that the district judge personally addressed him and confirmed his wish to waive a jury trial, we have no reason to question the voluntariness of the waiver.) Because Williams never raised this issue below, no evidence was elicited as to the circumstances underlying his waiver and the district court never made a finding as to whether it was knowing and intelligent. The lack of a written waiver by Williams was a violation of Rule 23(a), and the failure to conduct a *Delgado* colloquy was contrary to the supervisory rule we adopted in *Scott*. But these errors do not call for reversal unless they affected Williams' substantial rights. 28 U.S.C. § 2111; Fed. R. Crim. P. 52; *Rodriguez*, 888 F.2d at 527-28. And we cannot determine whether his substantial rights were affected without evidence revealing what Williams knew and understood when he waived his right to a jury. The import of a silent record depends on which party bears the burden of production and persuasion on this question. *Pease v. Production Workers Union of Chicago & Vicinity Local 707*, 386 F.3d 819, 823 (7th Cir. 2004). If the applicable standard of review is harmless error, Rule 52(a), then it is the government that bears the burden, *United States v. Vonn*, 535 U.S. 55, 58, 122 S. Ct. 1043, 1046 (2002), and the lack of relevant evidence works to its detriment. *E.g.*, *United States v. Garcia*, 439 F.3d 363, 369 (7th Cir. 2006). If the standard is plain error, Rule 52(b), then it is Williams who bears the burden of production and persuasion, *Vonn*, 535 U.S. at 58, 122 S. Ct. at 1046, and a silent record works to his detriment. *E.g.*, *United States v. Griffin*, 521 F.3d 727, 730 (7th Cir. 2008).

We take our cue in how to assess the validity of Williams' waiver from two Supreme Court decisions dealing with

guilty pleas given by defendants who were not fully apprised of their trial rights before waiving those rights: *Vonn*, 535 U.S. 55, 122 S. Ct. 1043, and *United States v. Dominguez Benitez*, 542 U.S. 74, 124 S. Ct. 2333 (2004). The fact that this case involves a jury waiver rather than a guilty plea does not meaningfully distinguish it from *Vonn* and *Dominguez Benitez*, as they deal with a defendant's decision to waive *all* of his trial rights, including his right to a jury. The decision to plead guilty, like the decision to waive a jury trial, is one that is personal to the defendant. *Jones*, 463 U.S. at 751, 103 S. Ct. at 3312. It is a decision that must be voluntarily, knowingly and intelligently made. *E.g.*, *United States v. Ruiz*, 536 U.S. 622, 629, 122 S. Ct. 2450, 2455 (2002). And there is a detailed colloquy that a district court must engage in with the defendant before he pleads guilty which, like the *Delgado* colloquy, is designed to ensure that the decision to waive his constitutional rights is freely and intelligently made. *See* Fed. R. Crim. P. 11; *see McCarthy v. United States*, 394 U.S. 459, 464-65, 89 S. Ct. 1166, 1170 (1969).

*Vonn* holds that where a defendant challenges the validity of his guilty plea based on an error in the trial court's plea colloquy that he did not bring to the trial judge's attention, he bears the burden of showing that the defect constitutes plain error affecting his substantial rights. 535 U.S. at 59, 122 S. Ct. at 1046; *see* Rule 52(b). Vonn was charged with multiple offenses and had pleaded guilty first to one charge and later to two others. On both occasions, in advising Vonn of the rights that he was waiving by pleading guilty, the court neglected to mention his right to representation by an attorney if he went to

trial, in violation of Federal Rule of Criminal Procedure 11. *See* Fed. R. Crim. P. 11(b)(1)(D) ("Before the court accepts a plea of guilty . . . the court must address the defendant personally in open court . . . [and] must inform the defendant of, and determine that the defendant understands, . . . the right to be represented by counsel—and if necessary have the court appoint counsel—at trial and at every other stage of the proceeding[.]"). Although Vonn later (unsuccessfully) sought to withdraw one of his guilty pleas, he did not do so on the basis of the omission in the court's Rule 11 plea colloquy. Not until he appealed his conviction did Vonn object to the validity of his pleas based on that defect. Because he had not raised the omission with the district court, the Supreme Court held that Vonn was obliged to satisfy the plain-error standard set forth in Rule 52(b). The Court believed that to instead place the burden on the government to show that the error was harmless would give the defendant an undesirable incentive to keep quiet about the error unless and until he later decided he was unhappy with the outcome of his guilty plea:

> [A] defendant could choose to say nothing about a judge's plain lapse under Rule 11 until the moment of taking a direct appeal, at which time the burden would always fall on the Government to prove harmlessness. A defendant could simply relax and wait to see if the sentence later struck him as satisfactory; if not, his Rule 11 silence would have left him with clear but uncorrected Rule 11 error to place on the Government's shoulders.

535 U.S. at 73, 122 S. Ct. at 1054. The Court went on to hold that in deciding whether the defendant has carried the burden of showing that the error in the plea colloquy is plain error as defined by Rule 52(b), a reviewing court is not confined to the change-of-plea proceeding itself but may look to the entire record to determine whether the defendants' substantial rights were affected. *Id.* at 74-76, 122 S. Ct. at 1054-55.

*Dominguez Benitez* in turn holds that in order to demonstrate that his substantial rights were affected by a defect in the Rule 11 plea colloquy that he did not bring to the district court's attention, a defendant must convince the court that it is reasonably likely that he would not have pleaded guilty had he been properly apprised of his rights. 542 U.S. at 83, 124 S. Ct. at 2340. As in *Vonn,* the district court in *Dominguez Benitez* had omitted a key admonishment from the Rule 11 colloquy it engaged in with the defendant before accepting his guilty plea: The court failed to advise Dominguez that he could not withdraw his plea if the court later declined to accept the government's sentencing stipulations or recommendations. *See* Rule 11(c)(3)(B). But like Vonn, Dominguez first raised this omission on appeal, so he was obliged by the Court's holding in *Vonn* to show that the error constituted plain error that affected his substantial rights. The Court of Appeals concluded that it was enough for Dominguez to show that the district court's Rule 11 error was "not minor or technical" and that "he did not understand the rights at issue when he entered his guilty plea." *United States v. Dominguez Benitez*, 310 F.3d 1221, 1225 (9th Cir. 2002). But the Supreme Court held that the plain

error standard required Dominguez to show something more:

> As *Vonn* makes clear, the burden of establishing entitlement to relief for plain error is on the defendant claiming it, and for several reasons, we think that burden should not be too easy for defendants in Dominguez's position. First, the standard should enforce the policies that underpin Rule 52(b) generally, to encourage timely objections and reduce wasteful reversals by demanding strenuous exertion to get relief for unpreserved error. Second, it should respect the particular importance of the finality of guilty pleas, which usually rest, after all, on a defendant's profession of guilt in open court, and are indispensable in the operation of the modern criminal justice system. And, in this case, these reasons are complemented by the fact, worth repeating, that the violation claimed was of Rule 11, not of due process.

> We hold, therefore, that a defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea. A defendant must thus satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding.

*Id.* at 82-83, 124 S. Ct. at 2340 (citations, internal quotation marks, and footnote omitted).

These two decisions leave no doubt as to the standard of review that governs Williams' claim, which of the parties bears the burden of proof, and what must be shown. As in *Vonn* and *Dominguez Benitez*, there was a failure to apprise Williams of the nature of the right that he was surrendering in his waiver, and as in those two cases, Williams did not raise the omission in the district court. As a result, our review is for plain error, and it is Williams who must show that his substantial rights were affected by the error. He must show that he did not have a concrete understanding of his right to a jury trial, and that but for the trial court's failure to ensure he had that understanding, there is a reasonable probability that he would not have waived the right. Our assessment of Williams' waiver is informed not just by his colloquy with the district judge (which in this case was limited to asking him whether he wished to waive his right to a jury) but by the entire record.

Nothing in this record reveals that Williams lacked a concrete understanding of his right to a jury trial or that he likely would have elected a jury trial but for the district court's failure to properly admonish him as to the nature of this right. It is entirely possible that Williams did have an adequate understanding of the right, whether by virtue of his attorney's advice or his own education and experience, and that he still would have waived a jury trial assuming that the court had followed *Scott* and *Delgado* (and for that matter, Rule 23) to the letter. It is also possible that Williams had no idea what he was doing and that he would have insisted on a jury

trial had he been properly admonished. We have no way to assess his mental state on this record.

That it is Williams who bears the burden of production and persuasion dictates the outcome. Having submitted not so much as his own affidavit averring that he did not adequately comprehend the nature of his right to a jury trial and that he would not have waived the right had he properly understood it, Williams has failed to produce any evidence which would demonstrate that his substantial rights were affected. He has not shown (and on this record cannot show) that plain error occurred, and we have no choice but to affirm his conviction.

Williams endeavors to avoid this result and to distinguish *Vonn* and *Dominguez Benitez* by characterizing as a structural error the district court's failure to properly admonish him as to the nature of his right to a jury. Structural errors comprise "a limited class of fundamental constitutional errors that defy analysis by 'harmless error' standards." *Neder v. United States*, 527 U.S. 1, 7, 119 S. Ct. 1827, 1833 (1999) (internal quotation marks and citation omitted); *see Washington v. Recuenco*, 548 U.S. 212, 218 n.2, 126 S. Ct. 2546, 2551 n.2 (2006) (collecting examples of structural errors). These types of errors "affect[ ] the framework within which the trial proceeds," *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S. Ct. 1246, 1265 (1991), and "are so intrinsically harmful as to require automatic reversal (*i.e.* 'affect substantial rights') without regard to their effect on the outcome." *Neder*, 527 U.S. at 7, 119 S. Ct. at 1833; *Dominguez Benitez*, 542 U.S. at 81, 124 S. Ct. at 2339.

But structural errors are rare, *Recuenco*, 548 U.S. at 218, 126 S. Ct. at 2551, and the error that occurred here was not of this nature. To be sure, there are cases that refer to errors involving jury waivers as structural. *E.g.*, *Miller v. Dormire*, 310 F.3d 600, 603-04 (8th Cir. 2002) (finding structural error where defendant was denied his right to jury as result of his attorney's defective performance; attorney waived right on defendant's behalf without explaining right to him, and defendant did not realize he could object); *United States v. Duarte-Higareda*, 113 F.3d 1000, 1003 (9th Cir. 1997) (district court's failure to conduct colloquy to ensure that defendant who did not speak English made voluntary, knowing, and intelligent decision to waive jury required automatic reversal because error affected framework of trial and court could not determine whether error harmless). We have our doubts as to whether the structural terminology of such cases can be reconciled with *Dominguez Benitez*, which makes plain that one *can* evaluate whether the defendant's substantial rights were affected by the failure to properly admonish him as to the nature of his jury right. An invalid jury waiver certainly affects the framework of a case in sense that the determination of guilt or innocence will be made by a judge rather than a jury, and it would be a dubious enterprise to try and show that a jury likely would have reached a different result than the judge did. That is the point made by cases like *Miller*, 310 F.3d at 604. But for purposes of determining whether the waiver *was*, in fact, invalid, one can determine whether the defendant adequately understood his right to a jury; moreover, if the defendant lacked such

an understanding, one can assess the likelihood that he would have stood on his right to a jury had he been properly admonished of his right. *See*, *e.g.*, *Miller*, 310 F.3d at 602 (defendant testified that had he understood his right to a jury, he would have insisted on a jury trial rather than waiving right); *cf. Nelson v. Hvass*, 392 F.3d 320, 323-24 (8th Cir. 2004) (defendant not entitled to relief where he failed to show that he would not have waived jury had his attorney properly advised him as to his jury right).

Our adherence to the approach that the Supreme Court set forth in *Vonn* and *Dominguez Benitez* does not compel us to abandon language in our earlier decisions to the effect that we will not presume a valid waiver of the defendant's right to a jury trial from a silent record. *See Robinson*, 8 F.3d at 422 (quoting *Wandick*, 869 F.2d at 1087); *see also Carnley v. Cochran*, 369 U.S. 506, 516, 82 S. Ct. 884, 890 (1962). We are presuming nothing as to the validity of Williams' jury waiver; we are simply holding that he has not carried his burden of establishing plain error in the district court's acceptance of the waiver. Our decision, as we have explained, is simply a function of the elements of plain error and the allocation of the burden of proof to show such error. Had the error been preserved by raising it below, with the burden falling to the government to show harmless error under Rule 52(a), then the result of this appeal might well have been different on such a limited record.

Our decision today may amount to a departure from *Robinson* to the extent that *Robinson* treated the validity of

a jury waiver as a preserved issue although, as in this case, it was first raised on appeal. We note that the waiver in *Robinson* was memorialized solely by counsel and by the court, without confirmation on the record by Robinson himself that he wished to waive his right to a jury. On that record, we presumed that Robinson had only learned of his right to a jury when he conferred with appellate counsel and that, consequently, his first opportunity to raise the issue was on appeal. 8 F.3d at 425-26. We therefore remanded the case to the district court for an evidentiary hearing as to the validity of the waiver. *Id.* at 426. Here, by contrast, Williams himself did state on the record that he wished to waive a jury trial—so he knew, in some sense, that he had such a right. Nonetheless, he contends that he is entitled, at the least, to an evidentiary hearing of the kind we ordered in *Robinson* to ascertain whether his waiver was informed. But *Robinson* and similar cases pre-dated *Vonn* and *Dominguez Benitez*, and in light of the approach that the Supreme Court has taken to trial waivers which were not challenged in the district court, we are obliged to follow their lead.[2] Because Williams did not raise the validity of

---

[2] We note that prior to *Vonn*, the Ninth Circuit followed a similar approach to plea-colloquy defects, placing the burden on the government to show that any error in admonishing the defendant of his rights before accepting his guilty plea was harmless, even if the error had not been raised below, and reversing in the absence of such a showing. *See United States v. Odedo*, 154 F.3d 937, 940 (9th Cir. 1998). But the Supreme

(continued...)

his jury waiver in the court below, he must demonstrate that the acceptance of his waiver amounts to plain error. In particular, he must show that he did not have a concrete understanding of his right to a jury and that it is reasonably probable that he would not have waived a jury had he had such an understanding. He cannot make that showing on the limited record before us.

When we heard oral argument in this case, we raised the possibility that Williams might wish to drop this direct appeal (which raises no issue other than the jury waiver) and reserve the validity of his waiver for collateral review under 28 U.S.C. § 2255, and the opportunity that might afford him to develop the record as to the relevant facts surrounding his waiver. *See*, *e.g.*, *United States v. Rosario*, 234 F.3d 347, 352 (7th Cir. 2000). We gave Williams and his counsel time after argument to make that decision. We are informed, however, that Williams wishes to proceed with this appeal.  So be it.

Williams obviously has access to his own mental state and could have made a record in the district court as to what he did or did not understand about his right to a jury and whether he still would have waived a jury trial had he known all that he was entitled to know about that

---

[2]  (...continued)

Court rejected this approach in *Vonn*, which itself was a Ninth Circuit case. *See United States v. Vonn*, 294 F.3d 1093, 1093-94 (9th Cir. 2002) (on remand from the Supreme Court, noting the change the Supreme Court's decision had effected in the approach to such errors).

right. Under *Vonn* and *Dominguez Benitez*, he bears the consequence of his failure to make a record on these subjects. As he has not shown that his substantial rights were affected by the district court's failure to engage in a *Delgado* inquiry before accepting his waiver, we must affirm his conviction.

### III.

Because Williams did not challenge the validity of his jury waiver in the district court, he must show that the district court committed plain error in accepting his waiver without ensuring that his waiver was intelligent. On a record that is largely silent as to the informed nature of Williams' waiver, he cannot make this show-ing. We take the opportunity to remind the district courts and counsel for both defendants and the government that they are obliged to follow the dictates of Rule 23(a) and our decisions in *Scott* and *Delgado* in accepting a defendant's jury waiver and proceeding with a bench trial.

AFFIRMED