In the

 United States Court of Appeals
 For the Seventh Circuit
 ____________________
No. 22-1690
UNITED STATES OF AMERICA,
 Plaintiff-Appellee,
 v.

DAQUWON RICHARDSON,
 Defendant-Appellant.
 ____________________

 Appeal from the United States District Court for the
 Southern District of Indiana, Indianapolis Division.
 No. 1:19-cr-00365-JMS-TAB-1 — Jane Magnus-Stinson, Judge.
 ____________________

 ARGUED JANUARY 6, 2023 — DECIDED FEBRUARY 17, 2023
 ____________________

 Before EASTERBROOK, ST. EVE, and KIRSCH, Circuit Judges.
 KIRSCH, Circuit Judge. Driving alone in Indianapolis,
Daquwon Richardson committed a traﬃc violation and was
stopped by police. A subsequent inventory search of the car
uncovered a gun that, as a three-time convicted felon, Rich-
ardson could not lawfully possess. A jury convicted him of
that oﬀense, and the district court sentenced him as an armed
career criminal to the mandatory-minimum 15 years in
2 No. 22-1690

prison. Richardson asks us to overturn the jury’s verdict or,
short of that, vacate his sentence. Finding no error, we aﬃrm.
 Richardson argues that the government’s evidence was in-
suﬃcient to support his conviction for possession of a ﬁrearm.
See 18 U.S.C. § 922(g)(1). Since he never made that argument
below by moving for a judgment of acquittal, we ask only
whether his conviction reﬂects a “manifest miscarriage of jus-
tice.” United States v. Chaparro, 956 F.3d 462, 468 (7th Cir. 2020)
(citations omitted). “Under this standard, we will overturn
the jury’s verdict only if the record is devoid of evidence
pointing to guilt, or if the evidence on a key element of the
oﬀense was so tenuous that a conviction would be shocking.”
Id.
 Lacking evidence of actual possession—DNA, ﬁnger-
prints, an eyewitness, etc.—the government proceeded on a
constructive possession theory. The key issue, therefore, was
whether Richardson “had both the power and intention to ex-
ercise dominion and control over the ﬁrearm.” United States v.
Washington, 962 F.3d 901, 906 (7th Cir. 2020) (citations omit-
ted). To prove that he did, the government introduced the fol-
lowing evidence at trial: Richardson was the driver and sole
occupant of the car. When stopped, he initially gave the police
false names. In an eﬀort to identify him, oﬃcers conducted an
inventory search of the car. That search uncovered a ﬁrearm
stashed beneath the passenger seat, within the driver’s reach.
Before telling Richardson about the gun, oﬃcers asked him
whether he had a ﬁrearms license, to which he responded,
“That gun’s not mine.” The search uncovered other items be-
longing to Richardson, including a pay stub bearing his name.
When Richardson started having an asthma attack, he told of-
ﬁcers that his inhaler could be found in the car’s glove box.
No. 22-1690 3

And on jail calls with his girlfriend, who owned the gun, he
conﬁrmed that the gun was “in the same place that it’s always
in.” The jury heard all of this and found Richardson guilty.
Far from a “manifest miscarriage of justice,” the jury’s conclu-
sion that Richardson constructively possessed the gun was
entirely reasonable.
 After Richardson was convicted, the district court turned
to sentencing. When he was 16, Richardson and an accomplice
committed a series of armed robberies in Indianapolis. The
pair ﬁrst robbed the CVS at 7240 East 82nd Street at 4:48 am
on December 31, 2011. They hit the CVS at 1030 North Arling-
ton Avenue at 6:03 that morning. And they struck again at
7:26 pm the next day, targeting the Dollar General at
3725 North Keystone Avenue. Based on those prior convic-
tions, the district court concluded that Richardson fell under
the auspices of the Armed Career Criminal Act, which im-
poses a mandatory-minimum sentence of 15 years on any per-
son convicted of possessing a ﬁrearm as a felon if that person
has three or more prior convictions for violent felonies or se-
rious drug oﬀenses “committed on occasions diﬀerent from
one another.” 18 U.S.C. § 924(e). Richardson argues that the
district court erred in concluding that his three prior violent
felonies were “committed on occasions diﬀerent from one an-
other.”
 In Wooden v. United States, the Supreme Court explained
how district courts should evaluate whether crimes are com-
mitted on diﬀerent occasions. 142 S. Ct. 1063 (2022). The in-
quiry is both “multi-factored in nature” and “straightforward
and intuitive,” id. at 1070, 1071:
 Oﬀenses committed close in time, in an uninter-
 rupted course of conduct, will often count as
4 No. 22-1690

 part of one occasion; not so oﬀenses separated
 by substantial gaps in time or signiﬁcant inter-
 vening events. Proximity of location is also im-
 portant; the further away crimes take place, the
 less likely they are components of the same
 criminal event. And the character and relation-
 ship of the oﬀenses may make a diﬀerence: The
 more similar or intertwined the conduct giving
 rise to the oﬀenses—the more, for example, they
 share a common scheme or purpose—the more
 apt they are to compose one occasion.
Id. at 1071. “In many cases, a single factor—especially of time
or place—can decisively diﬀerentiate occasions.” Id.
 We agree with the district court’s conclusion that each rob-
bery was committed on a diﬀerent occasion. There is no col-
orable argument that the second and third robberies occurred
on the same occasion given the 36 hours that separated them.
See id. (“Courts, for instance, have nearly always treated of-
fenses as occurring on separate occasions if a person commit-
ted them a day or more apart.”). Although a closer call, the
ﬁrst and second robberies also constitute two separate occa-
sions. Just as a signiﬁcant temporal separation can diﬀerenti-
ate two occasions, so too can signiﬁcant distance. See id. (cit-
ing United States v. Rideout, 3 F.3d 32 (2d. Cir. 1993)). In
Rideout, the Second Circuit held that “oﬀenses committed
against diﬀerent victims separated by at least twenty to thirty
minutes and twelve to thirteen miles” constituted separate oc-
casions. 3 F.3d at 35. The story is much the same here. The
second robbery was committed more than an hour after and
12 miles away from the ﬁrst. As the district court noted, Rich-
ardson “could have chosen to stop [his] criminal behavior”
No. 22-1690 5

between those robberies but did not. With a meaningful gap
in time and space between them and notwithstanding the
similarities in victim, perpetrators, and methodology, all
three robberies were “committed on occasions diﬀerent from
one another.” And since Richardson’s argument that his age
at the time he committed the robberies should aﬀect ACCA’s
applicability is meritless, see United States v. Ramsey,
840 F. App’x 23, 24 (7th Cir. 2021) (deeming frivolous the
same argument in a materially identical case), we aﬃrm the
district court’s application of ACCA.
 We pause to note that the Supreme Court limits the docu-
ments a district court can look to when evaluating a defend-
ant’s criminal history for ACCA purposes. Shepard v. United
States, 544 U.S. 13, 26 (2005); Kirkland v. United States, 687 F.3d
878, 883−87 (7th Cir. 2012). The original state court indict-
ments, jury instructions and verdict forms, plea colloquy tran-
scripts and the like are in, but police reports, trial transcripts,
and complaint applications are out. Shepard, 544 U.S. at 21−26;
Kirkland, 687 F.3d at 884. The record below contains only an
amended indictment from Richardson’s state court case; that
document says nothing about the time or place of the rob-
beries. R.93-4. Those details are contained in an aﬃdavit at-
tached to the complaint ﬁled in this case, R.2 at 7−8, ¶ 23, but
an aﬃdavit that draws on unspeciﬁed records is not a Shepard
document. It is unclear what the probation oﬃcer had before
him when he completed the PSR, so we cannot know whether
his sources complied with Shepard’s strictures. But since Rich-
ardson never objected to the PSR’s description or sought clar-
iﬁcation from the district court as to what it was relying upon
in making its ACCA determination, we assume that the PSR—
and, in turn, the district court—relied only on those docu-
ments countenanced by Shepard. The better course would be
6 No. 22-1690

to ﬁle the Shepard documents on the docket. But, through his
silence, Richardson forfeited any relief Shepard might have of-
fered in the district court and, by not making the argument to
us, has waived it on appeal.
 Richardson also contends that the district court erred
when it applied a two-level enhancement for obstruction of
justice when determining his Guidelines range. In the govern-
ment and district court’s view, Richardson attempted to sub-
orn perjury from his girlfriend about whether they cohabi-
tated. We aﬃrm ACCA’s applicability, so we need not resolve
whether there was any error in the district court’s analysis:
Richardson’s sentence was as lenient as it could be, so any
Guidelines error was harmless. United States v. Cheek, 740 F.3d
440, 454 (7th Cir. 2014).
 One ﬁnal note: The district court’s judgment incorrectly
states that Richardson was convicted after pleading guilty.
We modify the judgment to reﬂect Richardson’s conviction by
the jury. 28 U.S.C. § 2106.
 * * *
 By a separate nonprecedential order, we resolve the order
to show cause we issued to Theodore J. Minch, counsel for
Richardson, for his persistent violation of court orders and his
deﬁcient performance in this appeal.
 AFFIRMED AS MODIFIED