In the

# United States Court of Appeals
## For the Seventh Circuit

No. 23-2695

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

EVELIO SANTANA,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:22-cr-00066-MPB-KMB-1 — **Matthew P. Brookman**, *Judge.*

ARGUED APRIL 23, 2025 — DECIDED JUNE 24, 2025

Before HAMILTON, KIRSCH, and JACKSON-AKIWUMI, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Defendant-appellant Evelio Santana pleaded guilty to unlawful possession of a firearm as a convicted felon. His sentence was enhanced under the Armed Career Criminal Act after the district judge found by a preponderance of the evidence that Santana had three prior convictions for violent felonies committed "on occasions different from one another." 18 U.S.C. § 924(e)(1). Santana appealed.

While his appeal was pending, the Supreme Court held that a jury must make the different-occasions determination and must do so unanimously and beyond a reasonable doubt. *Erlinger v. United States*, 602 U.S. 821, 835 (2024). Santana now argues that an *Erlinger* error occurred in his case because the judge, not a jury, made the determination and did so by a preponderance of the evidence.

Reviewing for plain error, we agree with Santana. In light of *Erlinger*, there was an error and with the benefit of hindsight the error was plain. Having increased Santana's possible sentence from a ten-year maximum to a fifteen-year minimum, the plain error affected his substantial rights. This error also unacceptably undermined the fairness and integrity of the proceedings, see *United States v. Maez*, 960 F.3d 949, 962 (7th Cir. 2020), because a reasonable jury might find a reasonable doubt about whether two of his three prior violent felonies were committed on different occasions. Accordingly, we vacate Santana's sentence and remand for resentencing.

I.   *Factual and Procedural History*

More than twenty-four years ago, in the early morning of January 29, 2001, Santana and another man robbed two gas stations in central Indiana. The first robbery was planned ahead and took place in Hamilton County. The robbers intended to rely on help from an "inside man," an employee of the gas station, but that inside man ended up not working the night of the robbery. Santana and his accomplice went forward anyway. They held the cashier at gunpoint, took $250 from the register, and took the cashier's wallet and phone. The two men then drove to a second gas station located about four miles away in adjoining Marion County. They held up the cashier and took $726 from the register. This second robbery,

unlike the first, was unplanned. According to the federal presentence report adopted by the district judge, Santana admitted that after he robbed the first gas station, he "realized he might be going to prison" and decided then to rob the second gas station as well.[1]

Santana was charged in Hamilton County for the first robbery and in Marion County for the second robbery. He pleaded guilty to both robberies and received concurrent sentences. One year earlier, Santana had been convicted of a separate burglary, which also counted as a violent felony.

In 2022, Santana pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The government relied on the three earlier convictions to support a sentence enhancement under the Armed Career Criminal Act, § 924(e). The government argued that Santana had previously been convicted of three violent felonies committed on "occasions different from one another." § 924(e)(1). Santana agreed that his burglary conviction was a § 924(e) predicate but argued that the two gas station robberies were not committed on different occasions.

The district judge held a status hearing to determine how Santana's sentencing would proceed. At the hearing, Santana's lawyer characterized the different-occasions determination as "up to the trial judge" under then-applicable

---

[1] The record does not reflect how long it took Santana to drive between gas stations. We take judicial notice of the Google Maps directions between the stations. Google Maps estimates that it would take eight to ten minutes to drive between the gas stations, assuming a departure time of 1:30 a.m., when the first robbery was called in to the police. https://perma.cc/2GEP-VVYG?type=image (last accessed June 24, 2025).

Seventh Circuit precedent. The government agreed with that characterization of circuit precedent but nonetheless objected (based on Department of Justice policy at the time) that the different-occasions determination needed to be made by a jury. The judge followed our precedent, e.g., *United States v. Elliott*, 703 F.3d 378, 381 (7th Cir. 2012), overruled the government's objection, and told the parties he would make the determination at sentencing. The government renewed its objection before sentencing, but the judge again overruled it. At that point, Santana's lawyer remained silent on the issue.

At the sentencing hearing, the judge heard argument on the merits of the different-occasions issue. Santana argued that both robberies were part of the same occasion because they involved the same conduct, the same type of victim, and were committed close in time and distance from one another. The government responded that the robberies were committed on different occasions because they were committed in different counties and a "meaningful distance" apart. Moreover, the government argued, the time spent driving from one robbery to the next provided an "obvious point of separation" during which Santana could have reflected and decided not to commit another crime.

The judge ruled that the robberies were committed on different occasions. He noted that the robberies were "charged in different documents, charged in different courts, in fact, in two different counties;" that they involved "different gas stations, [and] different victims;" that they were not part of "a common plan;" and that Santana had had time to reflect and to change his behavior between the robberies. At the end of the hearing, the government renewed its objection to having the judge make the different-occasions determination.

Santana did not comment, and the judge again overruled the objection. The judge sentenced Santana as an armed career criminal to the mandatory minimum fifteen years in prison followed by three years of supervised release.

After Santana appealed, the Supreme Court issued its opinion in *Erlinger v. United States*, 602 U.S. 821 (2024), vacating our decision in *United States v. Erlinger*, 77 F.4th 617 (7th Cir. 2023). The Court held that the different-occasions determination must be made by a unanimous jury beyond a reasonable doubt—not, as we had previously held, by a judge applying the preponderance standard. 602 U.S. at 825–26, 835. Santana now argues that his sentence must be vacated because the judge made the different-occasions determination and did so by only a preponderance of the evidence.

II. *Analysis*

A. *Waiver and the Standard of Review*

The government contends first that Santana waived his argument that a jury should have made the different-occasions determination, so that even plain-error review is not available. The government rests its argument on Santana's lawyer's statement at the status hearing that the different-occasions determination was up to the judge. Santana argues that his lawyer's comments did not waive the argument he makes now but merely told the judge the then-current state of circuit precedent.

We agree with Santana on this point. This record does not establish a valid waiver of his right to a jury trial on the different-occasions question. The Sixth Amendment right to a trial by a jury in a criminal case is "fundamental to the American scheme of justice." *Duncan v. Louisiana*, 391 U.S.

145, 149 (1968). It protects the accused from oppressive government prosecutions by placing decisions in the hands of laypeople who can use their collective common sense to decide guilt or innocence. *Williams v. Florida*, 399 U.S. 78, 100 (1970); *United States v. Williams*, 559 F.3d 607, 609 (7th Cir. 2009). A waiver of a right to jury trial must be voluntary, knowing, and intelligent, and it is a decision left to the accused himself, not to his attorney. *Jones v. Barnes*, 463 U.S. 745, 751 (1983); *Williams*, 559 F.3d at 609.

The right to a jury trial on sentencing enhancements is the same Sixth Amendment right for trial on guilt or innocence. See *Blakely v. Washington*, 542 U.S. 296, 310 (2004), citing *Duncan*, 391 U.S. 145. We see no reason why the same waiver standard should not apply to both.

The discussion among the judge and counsel tells us nothing about Santana's understanding of the right or his choice. Santana himself was never asked to waive the right for the fact-finding at sentencing. None of that is surprising, of course, since our circuit precedent at the time, before *Erlinger*, held there simply was no such right to a jury trial on the different-occasions question. But that's why there was no valid waiver, and the proper standard of review is for plain error.

B. *Applying Plain-Error Review*

Plain-error review requires us to determine whether (1) there was an error, (2) the error was plain, (3) the error affected Santana's substantial rights, and (4) the error "seriously affect[ed] the fairness, integrity, or public reputation of [the] judicial proceedings." *Maez*, 960 F.3d at 956, quoting *United States v. Olano*, 507 U.S. 725, 736 (1993). The government

concedes the first two elements but argues that Santana cannot meet the third and fourth elements.

The third element of plain error—substantial rights—is satisfied. In the nearly identical context of *Apprendi* errors, we have held that a defendant's substantial rights are affected if the key factual determination increased the applicable sentencing range. See *United States v. Martinez*, 258 F.3d 582, 586 (7th Cir. 2001) (drug quantity); see also *Erlinger*, 602 U.S. at 835 (noting that *Erlinger* itself was "nearly on all fours with *Apprendi*"). The sentencing enhancement here raised Santana's possible sentence from a ten-year maximum, 18 U.S.C. § 924(a)(8) (2018) (amended 2022), to a fifteen-year minimum, § 924(e)(1).[2]

On the fourth element of plain-error review, we have broad discretion to affirm despite a plain error if "it is clear beyond a reasonable doubt" that the result would have been the same absent the plain error. *United States v. Nance*, 236 F.3d 820, 825–26 (7th Cir. 2000); see also *Maez*, 960 F.3d at 963; *United States v. Curry*, 125 F.4th 733, 739 (5th Cir. 2025) (considering under plain-error review whether an *Erlinger* error affected defendant's substantial rights and likening the analysis to harmless-error review). Unlike harmless-error review for preserved issues, Santana has the burden to show prejudice. See *United States v. Mansoori*, 480 F.3d 514, 523 (7th Cir. 2007).

---

[2] After Santana was charged, Congress increased the statutory maximum penalty for being a felon in possession from ten years to fifteen years. Stop Illegal Trafficking in Firearms Act, Pub. L. 117-159, § 12004(c), 136 Stat. 1329 (2022).

To prevail, Santana must show that a jury could reasonably doubt that his robberies were committed on different occasions. A properly instructed jury would consider a "range of circumstances," such as the proximity of time and location of the robberies as well as the character and relationship of the robberies. *Wooden v. United States*, 595 U.S. 360, 369 (2022). A single occasion "may itself encompass multiple, temporally distinct activities," *id.* at 367, but "[i]n many cases, a single factor—especially of time or place—can decisively differentiate occasions," *id.* at 369–70. When the crimes are separated by a day or more, for example, they will "nearly always" be treated as different occasions. *Id.* at 370.

The few appellate cases addressing issues of harmless error for defendants sentenced before the Supreme Court's decision in *Erlinger* tend to support Santana, even under the plain-error standard. In *United States v. Johnson*, 114 F.4th 913 (7th Cir. 2024), for example, we held that an *Erlinger* error was not harmless. We explained that a reasonable jury could conclude that two robberies were committed on the same occasion where the defendant robbed one person at a bus stop and then immediately drove 0.6 miles to another bus stop to commit a second robbery. *Id.* at 917. We wrote that the "brief" drive was not a "significant intervening event" and that the robberies were "accomplished by the same means." *Id.*, quoting *Wooden*, 595 U.S. at 369–70.

Similarly, in *United States v. Cogdill*, 130 F.4th 523 (6th Cir. 2025), the Sixth Circuit held that a preserved *Erlinger* error was not harmless because a reasonable jury could conclude that two drug-trafficking offenses—committed in the same county and involving the same drug, though taking place months apart—were committed on the same occasion. See *id.*

at 529–30. The court noted that a jury in another case had recently determined that two crimes were committed on the same occasion despite taking place weeks apart, so the court concluded that "a jury, properly instructed, may not necessarily treat a long gap in time between offenses as conclusive." *Id.* at 530.

Cases holding *Erlinger* errors harmless beyond a reasonable doubt, in contrast, have involved much greater gaps in time and distance and greater differences in the crimes themselves. E.g., *United States v. Brown*, 136 F.4th 87, 98–99 (4th Cir. 2025) (robberies separated by two months); *United States v. Butler*, 122 F.4th 584, 590 (5th Cir. 2024) (four drug crimes committed months to years apart involving different buyers and different drugs); *United States v. Campbell*, 122 F.4th 624, 632 (6th Cir. 2024) (three drug crimes committed months and hundreds of miles apart, and involving different drugs).

The government contends that our pre-*Erlinger* holding in *United States v. Richardson*, 60 F.4th 397 (7th Cir. 2023), precludes relief for Santana. We affirmed a judge's different-occasions determination because the robberies were separated by an hour in time and twelve miles in distance, "notwithstanding the similarities in victim, perpetrators, and methodology." *Id.* at 400. As in *Richardson*, Santana's robberies had "similarities in victim, perpetrators, and methodology," and those facts tend to support a same-occasions determination. See *id.* But the time and distance factors in Santana's case are less clear-cut than those that were dispositive in *Richardson*—his robberies were separated by one third of the distance and one sixth of the time. Moreover, we upheld the different-occasions determination in *Richardson* under the preponderance standard. *Richardson*

does not show that any reasonable jury would agree beyond a reasonable doubt that Santana's robberies were committed on different occasions.

A properly instructed jury would look for reasonable doubt about whether the robberies were committed on different occasions. Both Santana and the government have plausible arguments for each *Wooden* factor. The distance in this case exceeded that in *Johnson*, and the robberies were committed in different counties, but four miles is not so far as to be controlling by itself. The estimated ten minutes that Santana took to drive between robberies is much less than the "day or more apart" that will "nearly always" be different occasions, *Wooden*, 595 U.S. at 370, and far less than the months-long gap in *Cogdill*. A jury might also find room for doubt since both crimes were robberies of gas stations and were further related because the second robbery was prompted by the risk of being caught after the first robbery. See *Richardson*, 60 F.4th at 400. In short, a jury might have reasonable doubts about whether the robberies were committed on different occasions. We thus conclude that the *Erlinger* error seriously affected the fairness and integrity of this sentencing, see *Nance*, 236 F.3d at 825–26, satisfying the last prong of the plain-error standard.

One closing note: The parties debate on appeal whether on remand double jeopardy would preclude resentencing on the § 924(e) enhancement. But the parties both ask to argue the issue in the first instance before the district court, so we leave that issue for the district court to address first. See, e.g., *Monge v. California*, 524 U.S. 721, 724, 728 (1998); *United States v. Hudspeth*, 42 F.3d 1015, 1025 (7th Cir. 1994), abrogated on other grounds by *United States v. Elliott*, 703 F.3d 378, 388 (7th Cir. 2012).

Santana's sentence is accordingly VACATED and the case is REMANDED for resentencing consistent with this opinion.

KIRSCH, *Circuit Judge*, concurring. I agree with the majority that Evelio Santana did not waive his right to a jury trial at sentencing. While some of our cases have suggested that a guilty plea operates as a general waiver of a defendant's right to a jury trial at all stages of the proceeding, e.g., *United States v. Roche*, 415 F.3d 614, 617 (7th Cir. 2005); *United States v. Parker*, 245 F.3d 974, 977 (7th Cir. 2001), that proposition is hard to square with *Blakely v. Washington*, 542 U.S. 296 (2004). Like here, the defendant in *Blakely* pleaded guilty to the underlying offense but argued that he had a right to have a jury determine all facts legally essential to his sentence. *Id.* at 299–301. The Court found in favor of Blakely and explained that while the government is free to seek judicial sentence enhancements when a defendant pleads guilty, the defendant must either stipulate to the relevant facts or consent to judicial factfinding. *Id.* at 310. If the government wants to avoid submitting sentencing factors to a jury, it should ensure the defendant has expressly waived his rights in the plea agreement and/or in the plea colloquy. See *id.*

I write separately to address the majority's application of the plain error standard. Consistent with our approach to *Apprendi* errors, e.g., *United States v. Nance*, 236 F.3d 820, 825–26 (7th Cir. 2000), the majority applies the harmless error standard under the fourth element of plain error review, *ante*, at 7. This approach is hard to square with the Supreme Court's view that the harmless error standard corresponds with the third element of plain error review, not the fourth. See, e.g., *United States v. Olano*, 507 U.S. 725, 734–35 (1993); *Molina-Martinez v. United States*, 578 U.S. 189, 194, 200–03 (2016); *Greer v. United States*, 593 U.S. 503, 507–09 (2021); accord *United States v. Curry*, 125 F.4th 733, 739–40 (5th Cir. 2025). As the Court explained in *Olano*, both harmless error

review and the third element of plain error review turn on whether the error affected the defendant's substantial rights. 507 U.S. at 734–35. Usually, this means the error must have been prejudicial. *Id.*

Our case law appears to have gotten on the wrong track after the Court's decision in *Johnson v. United States*, 520 U.S. 461 (1997). See *Nance*, 236 F.3d at 825–26. There, an element of the offense was determined by the district judge, not the jury, in violation of Johnson's Fifth and Sixth Amendment rights. *Johnson*, 520 U.S. at 464. Johnson argued that this was a structural error. *Id.* at 468–69. Structural errors are a special class of errors that may affect a defendant's substantial rights regardless of their prejudicial effect. *Id.*; see also *United States v. Marcus*, 560 U.S. 258, 263 (2010). In the same way that structural errors defy harmless error review, Johnson argued that they necessarily satisfy the third element of plain error review. *Johnson*, 520 U.S. at 468–69. The Court declined to decide whether the error was structural and instead held that Johnson failed to meet the fourth element of plain error review because the evidence against her was overwhelming and essentially uncontroverted. *Id.* at 469–70. In other words, the Court appeared to be applying something akin to the harmless error standard under the fourth element of plain error review, but only after it assumed her substantial rights had been affected.

Since *Johnson*, the Court has clarified that the failure to submit an element of the offense to the jury is not a structural error. *Neder v. United States*, 527 U.S. 1, 8–10 (1999). That means a defendant's substantial rights have not been affected under either harmless error review or the third element of plain error review unless the error was prejudicial. *Id.* at 15 (harmless error review); *Greer*, 593 U.S. at 507–09 (third

element of plain error review). The same holds true when the
trial court fails to submit a sentencing factor to the jury. *Wash-
ington v. Recuenco*, 548 U.S. 212, 222 (2006); see also *Molina-
Martinez*, 578 U.S. at 200–03 (considering prejudice to the de-
fendant from a sentencing error under the third element of
plain error review, not the fourth).

Despite these decisions, we have continued to say that, un-
der plain error review, a defendant's substantial rights are af-
fected whenever a sentencing factor increases the applicable
sentencing range—prejudice is not required. *Ante*, at 7. That
is so even though we have also recognized that, under harm-
less error review, the same sentencing error doesn't affect the
defendant's substantial rights absent prejudice. *United States
v. Mansoori*, 480 F.3d 514, 523 (7th Cir. 2007). Unless "substan-
tial rights" means something different in Federal Rule of
Criminal Procedure 52(b) than it does in Rule 52(a), I fail to
see why we would apply a different standard under the third
element of plain error review.

Further, by treating the fourth element of plain error
review as nothing more than a question of prejudice, we
render the discretion afforded to us illusory. *Olano*, 507 U.S.
at 737. The fourth element grants appellate courts discretion
to decide whether to correct a plain error. *Id.* at 735–36. We
should only exercise this discretion "if the error seriously
affect[s] the fairness, integrity or public reputation of judicial
proceedings." *Id.* at 736 (quotation omitted). Perhaps
prejudicial *Erlinger* errors will ordinarily satisfy this standard.
See *Rosales-Mireles v. United States*, 585 U.S. 129, 141 (2018)
(stating that plain Guidelines errors that affect substantial
rights will ordinarily satisfy the fourth element). But any
exercise of discretion "inherently requires a case-specific and

fact-intensive inquiry." *Id.* at 142 (quotation omitted). While I see no reason not to exercise our discretion in favor of Santana here, there may be instances where "countervailing factors" counsel against doing so. *Id.* In an appropriate case, we should revisit our approach.