In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 24-2683

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROBDARIUS WILLIAMS,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:22-cr-00063-JMS-MG-3 — **Jane Magnus-Stinson**, *Judge.*

_____

ARGUED NOVEMBER 12, 2025 — DECIDED DECEMBER 9, 2025

_____

Before BRENNAN, *Chief Judge*, and ST. EVE and KIRSCH, *Circuit Judges*.

KIRSCH, *Circuit Judge*. Robdarius Williams robbed an AT&T store, and one of his confederates pointed a rifle at a store employee. A jury therefore convicted Williams of Hobbs Act robbery and of aiding and abetting the brandishing of a firearm. He challenges the latter conviction, arguing that there wasn't sufficient evidence to establish that he had advance

knowledge that the rifle would be brandished. Because we find that there was, we affirm.

I

In December 2021, as a part of an ongoing investigation, law enforcement officers installed a GPS tracker on a car registered to Robdarius Williams's mother. Later, officers conducting surveillance saw Williams drive the car to the apartment complex where Quintez Tucker, one of Williams's co-defendants, lived. Tucker and another man got out of the car and entered the building. Williams stayed behind and stole a license plate from a car in the parking lot. When Tucker and the other man returned and got into Williams's car, Tucker was carrying a rifle.

Officers continued to watch as Williams drove to a gas station, where they observed Darrelle Risper in Williams's car. Williams then drove to a park, where he met up with another car and the stolen license plate was placed on Williams's car. The two cars proceeded to a shopping area containing several businesses, including an AT&T store. Both cars circled the shopping area, appearing to case the businesses. Williams then drove into the AT&T parking lot and parked in front of the store. Tucker and Risper exited Williams's car and headed towards the AT&T store. Risper carried the rifle under his clothing, its outline visible and almost to the knee of his sweatpants. Shortly after they got out of his car, Williams drove to the back side of the store.

Upon entering the AT&T store, Risper pulled out the rifle and pointed it at the manager, ordering him to give Risper and Tucker cash from the register and to take them to the back room where products were stored. While in the back room,

the AT&T employee heard Tucker and Risper talking to someone on speakerphone, who instructed them about the kinds of devices to steal. The unknown individual also asked the AT&T employee "about the back entrance … and if it connected to Emerson Avenue." At trial, the AT&T employee described the individual as having a voice "deeper than the individuals that were in the store." A detective involved in the investigation testified that Williams has "a very distinct, low tone, slow voice."

Tucker and Risper left the store with cash and boxes of merchandise and reentered Williams's car; Williams left the lot, turned onto Emerson Avenue, and drove away. Law enforcement subsequently arrested Williams, Tucker, and Risper a couple of miles from the store.

Williams was charged with and convicted of Hobbs Act robbery in violation of 18 U.S.C. §§ 1951(a), 2 and aiding and abetting the brandishing of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii), 2. The brandishing charge carries a mandatory minimum consecutive sentence of seven years. 18 U.S.C. § 924(c)(1)(A)(ii). If Williams had been convicted of aiding and abetting simple possession, rather than brandishing, the mandatory consecutive minimum would have been five years. *Id.* § 924(c)(1)(A)(i). The district court imposed a sentence of 30 months for the Hobbs Act robbery charge and the mandatory minimum of 84 months for the brandishing charge, for a total sentence of 114

months. Williams appealed without moving for a judgment of acquittal.

## II

On appeal, Williams challenges the sufficiency of the evidence supporting his aiding and abetting conviction. When considering such a challenge, we view the evidence in the light most favorable to the prosecution and only overturn the conviction if "no rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt." *United States v. Page*, 123 F.4th 851, 858 (7th Cir. 2024). We've described the defendant's burden under this standard as "nearly insurmountable." *Id.* (citation modified). And if the defendant did not move for a judgment of acquittal before the district court, the standard is even higher; we will only reverse if we find "a manifest miscarriage of justice under the plain error standard of review." *United States v. Eller*, 670 F.3d 762, 765 (7th Cir. 2012). Under this standard, we overturn the jury's verdict "only if the record is devoid of evidence pointing to guilt, or if the evidence on a key element of the offense was so tenuous that a conviction would be shocking." *United States v. Richardson*, 60 F.4th 397, 398 (7th Cir. 2023) (citation modified). Because Williams didn't move for a judgment of acquittal in district court, this higher standard applies.

Williams argues that the government put forth insufficient evidence to establish that he intended to aid and abet the brandishing of the rifle, and that therefore his conviction on that charge cannot stand. To establish the requisite intent, the government needed to prove beyond a reasonable doubt that Williams knew in advance that the others would brandish—not merely carry—the rifle during the robbery. See *United States v. Armour*, 840 F.3d 904, 911 (7th Cir. 2016) (citing

*Rosemond v. United States*, 572 U.S. 65, 81–82 (2014)). Under the plain error standard of review, the government's evidence was sufficient.

At trial, the government presented evidence that Williams drove to Tucker's apartment complex, where Tucker acquired a rifle. Agents also testified that Risper awkwardly carried that rifle into the AT&T store under his clothing, before removing and brandishing it during the robbery. Finally, the government presented evidence to support its theory that Williams was the person instructing Tucker and Risper over the phone while they were inside the store. The AT&T employee testified that someone on speakerphone with a "deeper" voice instructed Tucker and Risper about which devices to steal and asked about the back entrance and its access to Emerson Avenue. Law enforcement officers testified that Williams has a distinctly deep voice, that he reparked on the rear side of the AT&T store, and that he drove away from the store on Emerson.

Williams contends that the evidence presented at trial established that he knew a firearm would be possessed, not that it would be brandished. However, examining the evidence in the light most favorable to the government, we cannot conclude that the evidence on advance knowledge was "so tenuous" as to make Williams's conviction of aiding and abetting brandishing a firearm "shocking." *Richardson*, 60 F.4th at 398 (citation modified). This case resembles *Armour*, where we had "no doubt" that the evidence could "easily support" a jury's finding that the defendant aided and abetted the brandishing of a firearm during a bank robbery. 840 F.3d at 911. There, the defendant told a fellow robber to bring a firearm, firearms were brandished during the bank robbery, and the

defendant "led the enterprise" by planning the robbery and directing its commission via radio from outside the bank. *Id.* at 905–06, 911. Here, similarly, the government established that Williams drove Tucker to retrieve a rifle, which was brandished during the robbery, and introduced evidence suggesting that Williams directed the robbery from his car. Williams argues that, unlike in *Armour*, he was never definitively identified as the person on speakerphone, nor was there other evidence suggesting that he was the leader of the robbery. But our inquiry is only whether the government's evidence was so tenuous as to be shocking. See *Richardson*, 60 F.4th at 398. It was not.

AFFIRMED